JOSÉ GARRIGA, HIJO, INC., demandante y recurrido, *v.* CONDOMINIO MARBELLA DEL CARIBE OESTE y OTROS, demandados y peticionarios.

*Número:* CC-96-334          *Resuelto:* 31 de octubre de 1997

---

*José de la Cruz Skerrett* y *Nilda López Hidalgo*, del *Bufete De La Cruz Skerrett*, abogados de la parte recurrente.

PER CURIAM

I

El condominio Marbella del Caribe, Torre Oeste, ubicado en Isla Verde, Carolina, es un edificio multipisos organizado según la Ley de Propiedad Horizontal, Ley Núm. 104 de 25 de julio de 1958, según enmendada, 31 L.P.R.A. sec. 1291 *et seq.*

En septiembre de 1989, dicho condominio sufrió daños considerables debido al paso del huracán Hugo. Con el propósito de reclamar por los daños a su aseguradora, la Junta de Directores del condominio solicitó varias cotiza-

ciones para la adquisición de equipos y reparación de la propiedad afectada. A tales efectos, el entonces administrador del condominio, Sr. Darwin Cancel, requirió de José Garriga, Hijo, Inc. (en adelante Garriga) un *estimado* de precios de unos extractores para el sótano y la azotea necesarios para sustituir los averiados. El 21 de noviembre de 1989, Francisco Tirado, vendedor de Garriga, ofreció al señor Cancel una cotización ascendente a treinta y un mil dólares ($31,000) por el costo y la instalación de los extractores que serían instalados en el sótano y en la azotea del edificio.

La Junta de Directores incluyó dicha cotización a su reclamación (comprendía también otros conceptos) a su aseguradora, la cual luego de ciertas negociaciones acordó que pagaría una cantidad menor de la totalmente reclamada. Esa decisión obligó a la Junta de Directores a limitar las reparaciones, ya que la indemnización no era suficiente para cubrir la totalidad de las obras previstas. La Junta de Directores desistió de su intención de reparar los extractores de la *azotea*, pues éstos no se habían utilizado por varios años, transmitían mucho ruido a los apartamentos de las personas próximas, su rendimiento era muy bajo y gastaban mucha electricidad. Como resultado, instruyó al señor Cancel para que contratara con Garriga *únicamente* las obras necesarias para reparar los daños ocurridos en el sótano, cuyos extractores eran imprescindibles para extraer los gases producidos por los automóviles que transitan en el estacionamiento. El 8 de junio de 1990, éste envió una carta al señor Tirado, vendedor de Garriga, para informarle esa decisión y limitar el trabajo de los extractores del sótano. Garriga realizó esa obra, cuyo costo ascendió a dieciséis mil novecientos dólares ($16,900).

Luego de instalado dicho equipo y *contrario a lo acordado*, un grupo de empleados de Garriga se presentó al condominio Marbella del Caribe a instalar los extractores de la azotea. *El señor Cancel no les permitió la entrega y prohibió que los instalaran en la azotea* porque esa obra no

se había acordado. Tras comunicarse con las oficinas de Garriga, los empleados se retiraron del condominio.

Transcurrió el tiempo y las partes no se comunicaron para resolver el problema. El señor Cancel cesó sus funciones como administrador del condominio Marbella del Caribe y fue sustituido por el Sr. César Arroyo. Con posterioridad al cambio de administración, nuevamente otros empleados de Garriga acudieron al condominio para instalar los extractores de la azotea, gestión que ya había sido impedida por el señor Cancel. Por desconocer la situación relacionada a ese asunto, el señor Arroyo permitió la entrada de los empleados y su instalación de los equipos. Garriga inició gestiones para el cobro de dicho equipo y servicio valorado en diecinueve mil dólares ($19,000).

El condominio Marbella del Caribe se negó a pagar y requirió que removiera los extractores, cuya instalación no había sido autorizada ni aceptada por la Junta de Directores. Infructuosamente las partes sostuvieron varias conversaciones con miras a resolver el problema extrajudicialmente, lo cual culminó con una demanda instada por Garriga el *30 de abril de 1992*. Luego de los trámites de rigor, previa celebración de vista en su fondo, el Tribunal de Primera Instancia (Hon. Lydia E. Couvertier, Juez) dictó una sentencia, en la cual desestimó la demanda y condenó a Garriga a pagar tres mil dólares ($3,000) por honorarios de abogado, más las costas. Garriga apeló ante el Tribunal de Circuito de Apelaciones para plantear como error la determinación del Tribunal de Primera Instancia de que el trabajo contratado se refería sólo a los extractores del sótano, y al no aplicar la doctrina de enriquecimiento injusto. Previa oposición, el Tribunal de Circuito de Apelaciones (Hons. Rivera de Martínez, Rodríguez García y Martínez Torres, Jueces) emitió la sentencia y revocó. En esencia, dicho foro determinó que el condominio Marbella del Caribe ratificó el acto de su administrador al no devolver y mantener los extractores y se benefició. Concluyó que se había configurado un enriquecimiento injusto. Remitió el caso al tribunal de instancia para que determinara el

monto de responsabilidad del Condominio Marbella del Caribe. Inconforme, el condominio Marbella del Caribe acudió ante nos.([1])

Mediante Resolución de 30 de mayo de 1997, ordenamos al recurrido Garriga a que mostrara causa por la cual no debíamos expedir y revocar la sentencia del Tribunal de Circuito de Apelaciones y, en su lugar, confirmar la del Tribunal de Primera Instancia. Transcurrido el término para ello, con el beneficio de una exposición narrativa de la prueba y sin que la recurrida haya comparecido, resolvemos.

## II

El planteamiento central del condominio Marbella del Caribe consiste en que el Tribunal de Circuito de Apelaciones erró al aplicar la doctrina de enriquecimiento injusto y resolver que el Consejo de Titulares se aprovechó de un equipo cuya adquisición no autorizó. *Tiene razón.*

Los hechos ante nos revelan que el condominio Marbella del Caribe, a través de su Administrador, el señor Cancel, le dejó saber claramente al señor Tirado, empleado de Garriga, que la Junta de Directores del condominio sólo había aprobado la instalación de los extractores en el sótano, no en la azotea, pues carecía del presupuesto necesario. Para confirmar esa orden de instalación limitada, el señor Tirado solicitó al señor Cancel una carta en la cual reafirmara la adquisición e instalación de dicho equipo. Así lo hizo el señor Cancel el 8 de junio de 1990. Aunque la carta no especifica que sea a la instalación de los extractores del sótano a lo que se le dio el visto bueno, entendemos que no era necesario ya que el señor Cancel le había aclarado an-

---

([1]) Como único error discute:

"Erró el Tribunal de Circuito de Apelaciones al determinar aplicar la doctrina de enriquecimiento injusto en el caso de marras y resolver que el Consejo de Titulares codemandado se aprovechó de un equipo cuya adquisición no autorizó." Petición de *certiorari*, pág. 6.

teriormente esa información al señor Tirado por medio de sus conversaciones.

█ Dos (2) hechos avalan esa determinación. La primera vez que Garriga intentó instalar los extractores de la azotea, se lo impidieron. Se comunicaron con sus oficinas y le explicaron la situación. Posteriormente, Garriga no se comunicó de ninguna forma para tratar de solucionar la situación. Transcurrió el tiempo y coincidentalmente, luego de que se sustituyera al administrador del condominio, es que Garriga vuelve a intentar y logra instalar los extractores. Se probó que en esa ocasión el señor Arroyo, nuevo administrador, desconocía la situación con Garriga. La actitud de Garriga fue de mala fe, pues se aprovechó del desconocimiento del nuevo administrador, quien ignoraba lo que había ocurrido.[2]

Cabe advertir, que el propio Tribunal de Circuito reconoció en su sentencia que se había demostrado que la expresión "darle el visto bueno", en la carta el señor Cancel al señor Tirado, *se refería exclusivamente al trabajo cotizado para los extractores del sótano.*

█ Así limitado fue que se contrató y quedaron manifestadas las voluntades de ambas partes.[3] La intención

---

[2] Esas determinaciones están ampliamente sostenidas por la prueba según la exposición narrativa. No intervendremos con la apreciación de la prueba en ausencia de pasión, prejuicio, parcialidad o error manifiesto. El foro de instancia apreció y adjudicó credibilidad al dirimir las distintas versiones. *Monllor v. Soc. de Gananciales,* 138 D.P.R. 600 (1995); *Levy v. Aut. Edif. Públicos,* 135 D.P.R. 382 (1994); *Pérez v. Col. Cirujanos Dentistas de P.R.,* 131 D.P.R. 545 (1992).

[3] Para que exista un contrato tienen que concurrir tres (3) requisitos: (1) el consentimiento de los contratantes, (2) el objeto cierto que sea materia del contrato, y (3) la causa de la obligación que se establezca. *Col. Int'l Sek P.R., Inc. v. Escribá,* 135 D.P.R. 647, 664 (1994), citando el Art. 1213 del Código Civil, 31 L.P.R.A. sec. 3391. El consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que ha de constituir el contrato. *González v. Alicea, Dir. Soc. Asist. Legal,* 132 D.P.R. 638 (1993); *Ramírez v. Club Cala de Palmas,* 123 D.P.R. 339 (1989); *Vilá & Hnos., Inc. v. Owens Ill. de P.R.,* 117 D.P.R. 825 (1986); *Prods. Tommy Muñiz v. COPAN,* 113 D.P.R. 517 (1982).

En nuestra jurisdicción rige la teoría de la subjetividad en la interpretación de los contratos. Conforme a esta teoría, debe prestarse una particular atención a la voluntad de las partes que hay que aceptar y cumplir. *Ramírez, Segal & Látimer v.*

fue clara: instalar los extractores en el sótano a cambio de determinada cantidad de dinero. Esa voluntad de las partes se puede deducir de las negociaciones, específicamente de las comunicaciones entre el señor Cancel, administrador del condominio Marbella del Caribe, y el señor Tirado, empleado de Garriga, *quien casualmente no fue presentado como testigo por Garriga*. La intención de la parte demandada fue confirmada por la carta que le envió al señor Tirado. ¿Qué más podía exigírsele al condominio Marbella del Caribe luego de que la primera vez se le niega a Garriga el permiso para instalar los extractores de la azotea y así se lo comunican por teléfono?

## III

El Tribunal de Circuito de Apelaciones aplicó la doctrina de enriquecimiento injusto fundamentado en que la Junta de Directores del condominio Marbella del Caribe no devolvió los extractores de la azotea ni solicitó su remoción, y que *aparentemente* se beneficiaban de su uso y disfrute.

La doctrina del enriquecimiento injusto es un principio general del derecho, fundado en la equidad que informa todo el ordenamiento jurídico, cuando la ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no encuentra una explicación razonable en el ordenamiento vigente. *E.L.A. v. Soto Santiago*, 131 D.P.R. 304 (1992); *Ortiz Andújar v. E.L.A.*, 122 D.P.R. 817 (1988). Para que se configure un enriquecimiento injusto tienen que cumplirse los requisitos siguientes: (1) la existencia de un enriquecimiento; (2) un empobrecimiento correlativo; (3) la conexión entre el empobre-

---

*Rojo Rigual*, 123 D.P.R. 161 (1989); *Coop. La Sagrada Familia v. Castillo*, 107 D.P.R. 405 (1978); *Merle v. West Bend Co.*, 97 D.P.R. 403 (1969).

La determinación de la verdadera intención de las partes debe fundamentarse en actos coetáneos o posteriores al contrato, así como en actos anteriores o en la total conducta de los contratantes. *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64 (1983).

cimiento y el enriquecimiento; (4) la falta de causa que justifique el enriquecimiento, (5) *la inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. v. Soto Santiago,* supra; *Ortiz Andújar v. E.L.A.,* supra.

■ Con vista a dichos requisitos, en apariencia podría afirmarse que Garriga ha sufrido cierto empobrecimiento al no recibir el pago por el equipo de extractores en el techo, de los cuales supuestamente[4] se está beneficiando el condominio Marbella del Caribe, sin haberles pagado. No obstante, nos parece que esa situación la provocó Garriga a sabiendas y con toda intención, pues conocía que el condominio Marbella del Caribe no los quería y aún así, obstinadamente, insistió en instalarlos.[5]

En resumen, entre Garriga y condominio Marbella del Caribe existió un contrato; no aplica la doctrina del enriquecimiento injusto. Garriga puede remover su equipo de la azotea del condominio Marbella del Caribe bajo su propia responsabilidad.

Se expedirá el auto, revocará la Sentencia del Tribunal de Circuito de Apelaciones de 29 de mayo de 1996 y se reinstalará la del Tribunal de Primera Instancia.

*Se dictará la correspondiente sentencia.*

El Juez Presidente Señor Andréu García y el Juez Asociado Señor Hernández Denton disintieron sin opinión escrita.

---

[4] Decimos "supuestamente", pues la prueba fue a los efectos de que el condominio Marbella del Caribe desistió de instalarlos por el alto consumo de energía eléctrica que implica su uso y que su operación era deficiente debido a algunas alteraciones realizadas al edificio.

[5] En *Ortiz Andújar v. E.L.A.*, 122 D.P.R. 817 (1988), indicamos que la figura del enriquecimiento injusto no la podrá invocar el gestor de mala fe.