Colón Birriel, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
I
Medical Services Management Corp.; Dr. José Robaina, su esposa y la Sociedad de Gananciales compuesta por ambos; el Dr. Pedro Luis Arroyo Ramírez, su esposa y la Sociedad Legal de Gananciales compuesta por ambos, (en adelante los “apelantes”), solicitan la revocación de una Sentencia Parcial dictada por el Tribunal de *1018 Primera Instancia, Sala Superior de Ponce (el “Tribunal”), Honorable José M. Fernández Luis, el 20 de septiembre de 1999, notificada el 27 de octubre del mismo año, en el caso de Fundación Dr. Manuel de la Pila v. Medical Services Management Corp. y Otros, Civil Núm. JAC 93-0219. El dictamen dispuso que el inciso 3 de la cláusula 8 del contrato objeto de controversia, establecía el derecho de Medical Services Management, Inc. (“Medical Service”) a percibir el 65% de lo facturado y cobrado por servicios o procedimientos especiales y no de todos los servicios rendidos durante la vigencia de la relación contractual. Y que desde el 25 de noviembre de 1988, el 65% era del 50% de lo cobrado por tales conceptos. En su consecuencia, se desestimó la reconvención presentada por Medical Services. '
Con el beneficio de los escritos de las partes y de la transcripción de la vista, resolvemos, no sin antes exponer, en lo pertinente, lo acontecido en el Tribunal.
II
El 17 de mayo de 1993, la Fundación Dr. Manuel de la Pila Iglesias, Inc. H/N/C Hospital Dr. Pila, (en adelante el “apelado” o el “Hospital”) presentó ante el Tribunal una acción sobre Sentencia Declaratoria, Cobro de Dinero y Daños Por Incumplimiento Contractual contra los apelantes. Apelación, Demanda, a las págs. 1-4 del apéndice. En esencia, alegaron que el 14 de. abril de 1988, los apelantes y el Hospital Dr. Pila reconocieron y suscribieron un contrato de servicios profesionales, titulado “Emergency Physician's Agreement”, Apelación, Emergency Physician's Agreement, a las págs. 57-75 del apéndice. Mediante comunicación de 25 de noviembre de 1988, se enmendaron los incisos 3 y 1 de las cláusulas 8 y 16 del contrato, relativas al pago e incentivos y sobre el término de vigencia del contrato. Apelación, Comunicación de 25 de noviembre de 1988, a la pág. 77 del apéndice. El contrato se suscribió a los fines de que el grupo médico Corporación Medical Services, operara y administrara la Sala de Emergencia del Hospital, en el Municipio de Ponce. Alegó el Hospital que a la fecha de terminación del contrato, 31 de enero de 1993, las partes se adeudaban entre sí las siguientes sumas de dinero:

"1. Los apelantes adeudaban al hospital $173,590.34 por concepto de servicios cobrados a los planes de Medicare y ACAA.

2. El hospital adeudaba a los apelantes $22,587.85 por concepto de la cláusula de incentivo.

3. El hospital adeudaba a los apelantes el importe de las nóminas del mes de enero de 1993, ascendente a $30,000."

Por su parte, los apelantes contestaron oportunamente la demanda. Presentaron varias defensas especiales y/ o afirmativas, y reconvencionaron reclamando por ciertas sumas de dinero adeudas por el Hospital y que se le ordenare a éste dar cumplimiento a las condiciones contractuales, específicamente al pago de los incentivos y se le permitiera el examen de los libros de contabilidad, lo cual se le había negado. Apelación, Contestación..., a las págs. 5-11 del apéndice. Alegaron que conforme al contrato, el Hospital tenía que pagarle un incentivo del 65% de todas las sumas de dinero de facturas cobradas por los procedimientos especiales o servicios que fueron cargados a los planes médicos pre-pagados a los pacientes privados. La deuda reclamada por ese concepto ascendía a la suma de $421,200, según lo dispuesto en el contrato vigente desde el 14 de abril de 1988, hasta el 14 de febrero de 1988, fecha en que fue enmendado. En adición, fue reclamada la suma de $816,972 correspondientes a los incentivos, desde el 26 de noviembre de 1988, hasta el 31 de enero de 1993, fecha en que expiró el contrato entre las partes. Este incentivo, según reclamado, fue ajustado al 50%, según el tope acordado en la enmienda suscrita el 25 de noviembre de 1988. Por último, el Hospital, presentó escrito intitulado “Réplica a Reconvención” y varias defensas. Apelación, Réplica a..., a las págs. 12-14 del apéndice.
Así las cosas, quedó trabada la controversia, circunscrita a la interpretación de la cláusula número 8 inciso 3 del contrato. La cláusula 8 del referido contrato establecía originalmente:

*1019
"EIGHT: COMPENSATION

As compensation for the services set forth in this Agreement, the Hospital shall pay the CORPORATION for all services rendered by the Physician and his associates or employees, the sum of TWENTY THOUSAND FOUR HUNDRED FOURTEEN DOLLARS AND SIXTY-SIX CENTS ($20,414.66) per calendar month in a leap-year, and the sum of TWENTY THOUSAND THREE HUNDRED SIXTY-TWO DOLLARS AND SIXTY-SIX CENTS ($20,362.66) per calendar month in a regular year.

The agreed compensation has been determined assuming that patient visits shall not be less than 1800 per month nor more than 2100 per month, and that this amount of patient visits require at least 32 doctors-hours per day during a 24 hour period.

If for any reason there is a reduction or an increase during any given month of the patient visits previously stated and the CORPORATION or the HOSPITAL in consultation with each other determine that a reduction or an increase in doctors- hours for any given period is deemed appropriate, then the compensation stated in this clause EIGHT’:

(1) shall increase or decrease proportionately. Both parties agree that the patients-visits criteria is an essential factor in the determination of the agreed compensation.

(2) As an additional compensation for administrative services, the Hospital shall pay to the CORPORATION the sum of FOUR THOUSAND FIVE HUNDRED DOLLARS ($4,500.00) per month.

(3) In addition to the above payments and as incentive, the CORPORATION shall receive SIXTY-FIVE PERCENT (65%) of any sum invoiced and collected by the HOSPITAL for special procedures or services which may be charged to the plans or private patients served by the Emergency Facilities. The CORPORATION or its representative will have the right to inspect the accounting records of the Hospital as they pertain to this matter only, at reasonable times after prior written notice to the Hospital.

Non-professional, technical and non-technical employees of these facilities hired by the CORPORATION shall, as such employees, be subject to all rules, regulations and personnel policies of the Hospital."

Posteriormente, como ya ha sido señalado, el 25 de noviembre de 1988, las partes enmendaron el contrato a los fines de modificar el porciento de incentivo del 65% a uno que no excediera de un 50% de la cantidad total del contrato. La cláusula según modificada, lee como sigue:

“In addition to the above payments and as an incentive, the corporation shall receive sixty five percent (65%) of any sum invoiced and collected by the hospital for special procedures or services which may be charged to the plans or private patients. This 65% incentive shall not exceed 50% of contract amount. ”

El Hospital es de la posición que la frase “special procedures or services” son sinónimos; mientras que Medical Services sostiene que un procedimiento especial no equivale a un servicio especial. Por lo que, según la posición de Medical Services, el pago de incentivos procede tanto cuando se efectúan procedimientos especiales como cuando se rinden servicios especiales. En la Sentencia Parcial, el Tribunal le da la razón al Hospital. Inconformes, los apelantes le imputan al Tribunal haber errado: (a) al interpretar la cláusula “special procedures or services” del contrato suscrito; y (b) al descartar la prueba pericial médica, no impugnada, sometida por Medical Services en apoyo de su interpretación de la cláusula “special procedures or services”.
Ill
El contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. Artículo 1206 Código Civil, 31 L.P.R.A. § 3371. Existe un contrato cuando concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea *1020 materia.del contrato, y (c) causa de la obligación que se establezca. Artículo 1213, § 3391, Código Civil, supra. Los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Artículo 1210 § 3375, Código Civil, supra. En el ámbito de las obligaciones y contratos, es doctrina fundamental que cuando los términos de un contrato son claros, y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación. Artículo 1233, § 3471, Código Civil, supra; Marcial Burgos v. Tomé, 144 D.P.R. 522, (1997); Trinidad García v. Chade, Op. de 18 de enero de 2001, 2001 J.T.S. 10. En tales casos, prevalecerá entonces el sentido literal de las cláusulas. Es por ello que la facultad judicial extraordinaria de intervenir con la autonomía contractual mediante el ejercicio de su función moderadora, debe ejercerse con extrema cautela y patente justificación. Marcial Burgos v. Tomé, supra, a la pág. 536, citando a López de Victoria v. Rodríguez, 113 D.P.R. 265, 271 (1982).
En Puerto Rico rige el principio de la libertad de contratación, según el cual las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral ni al orden público. Artículo 1207, 31 L.P.R.A. § 3372; Unisys v. Ramallo Brothers, 128 D.P.R. 842 (1991); Mattei Nazario v. Vélez & Asoc., Op. de 7 de mayo de 1998, 98 J.T.S. 55; Trinidad v. Chade, supra. Aunque -de ordinario-, al adjudicar controversias dentro del ámbito contractual, se presupone que lo consignado expresamente en el texto contractual consiste en la voluntad de las partes contratantes, en circunstancias en que se ha tenido duda sobre la intención común y evidenciada de los contratantes, el tribunal debe indagar más a fondo sobre cuál ha sido la verdadera intención de las partes. [...] Interpretar si un contrato es claro presupone concordar su letra con la intención de las partes. Marcial Burgos v. Tomé, supra, a las págs. 536-537.
Por otra parte, rige en nuestro sistema de derecho, en materia de interpretación de contratos, la teoría de la subjetividad, conforme a la cual debe prestarse particular atención a la voluntad de las partes. La determinación de la verdadera intención de las partes debe basarse en actos coetáneos o posteriores al contrato, así como en actos anteriores o en la total conducta de los contratantes. [P]ara determinar la voluntad, [hay que tomar] eñ consideración la ocasión, las circunstancias, las personas y el acuerdo que se intentó llevar a cabo. Unisys v. Ramallo Brothers, supra, a la pág. 853. Este precepto es de carácter demostrativo, no taxativo y, por lo tanto, no impide que se tomen en consideración actos anteriores a la contratación. Después de todo, los actos preparativos del contrato son muchas veces más imparciales que los posteriores. Ramírez, Segal & Látimer v. Rojo Rigual, 123 D.P.R. 161, 174 (1989). Véase además, José Garriga Hijo, Inc. v. Cond. Marbella del Caribe Oeste, 143 D.P.R. 927, 932-933 (1997).
En el caso de autos, como es sabido, la controversia gira esencialmente en tomo a la interpretación que de la cláusula contractual número ocho (8) inciso tres (3), han hecho las partes, respecto a la compensación que en calidad de incentivo recibiría la apelante Medical Services. A continuación transcribimos parte de los testimonios prestados por los peritos de ambas partes, los que a nuestro juicio, en unión a los restantes testimonios, sostienen el dictamen del Tribunal.

“Testigo: Doctor Trew Remignanti, perito de los apelantes, especialista en Sala de Emergencia con experiencia en la Contratación, Facturación y Médico en Sala de Emergencia:

(Interrogatorio Directo del Ledo. Mendoza, págs. 92-107 de la Transcripción)

Pregunta: Vamos a hablar específicamente de la frase “Special Procedures for [sic] Services” en esta cláusula. Explíquenos cómo usted interpreta eso a base de su experiencia y preparación.

Respuesta: Yo interpretaría esto como que... diciendo que significa que el hospital le pagará al grupo de médicos el 65% de todos los servicios médicos que facture el hospital.

*1021
Pregunta: E incluye el término “Special Procedures”. Explíquenos y dénos ejemplos.

Respuesta: Diría que el trasfondo que estaría aquí es que el término procedimientos y servicios se usan cuando... El procedimiento quiere decir que el médico, por lo general, hace algo con las manos. Servicios quiere decir que se requiere algún proceso conmitivo de evaluación. Y por eso es que principalmente se hace esa distinción.

Pregunta: ¿Procedimientos y servicios son sinónimos en la práctica de su profesión?

Respuesta: Yo no los considero así.

Pregunta: ¿Porqué?

Respuesta: Por lo que expliqué anteriormente. Servicios, por lo general, se refieren a evaluaciones y procesos que requieren algo conmitivo. Procedimiento es algo manual, algo en el que se requiere una acción del doctor. Existe una parte en la que las dos...

Pregunta: “Imbricación”.

Pregunta: Le pregunto, el contrato dice “Special Services”... El contrato dice “Special Proceedures for Services”. Y le pregunto lo siguiente. Si dijera y utilizara la frase “Special Services”, ¿qué significa eso para usted, “Special Services"?

Respuesta: No. No tendría ningún significado sin tener la oportunidad de preguntarle... de pedirle a alguien que me explicara lo que querían decir con eso.

Pregunta: Vamos a suponer que la Cláusula 8-3, que es de la que estuvimos hablando, es interpretada a los fines de que solamente cubre procedimientos y no servicios. Y la pregunta es, ¿cuál sería, entonces, en su opinión la rentabilidad de ese contrato?

Respuesta: Si estuviese escrito de esa manera, limitaría el valor monetario grandemente del contrato.

[...]

Pregunta: Vamos a hablar del “CPT”.

Pregunta: Como cuestión introductoria, explíquenos ¿qué es?

Respuesta: El “CPT” se ha elaborado para que el médico pueda determinar cómo recibir compensación por los servicios que le ha provisto al paciente.

Pregunta: ¿Quién prepara o publica esta publicación?

Respuesta: Esta es publicada por la Asociación Médica Americana o American Medical Association.

[...]

Pregunta: ¿Son usados los términos procedimientos y servicios como sinónimos?

Respuesta: A veces sí, hasta en el “CPT”, a veces se usan como sinónimos, pero también llegan a un punto en que se hace una distinción entre los dos.

*1022
Pregunta: Y en términos del uso diario en Sala de Emergencia, ¿son sinónimos?

Respuesta: No se considera sinónimo por médicos de sala de Emergencia en su uso diario. No. ”

Contrainterrogatorio del Ledo. Pérez, (a la pág. 99 de la Transcripción)

Pregunta: Una pregunta, doctor, esa cláusula de compensación que usted tiene al frente, usted que es un angloparlante, ¿le podría usted decir al tribunal, por favor, si la palabra o la frase “Special Procedures for Services", en esa frase, “Special” como adjetivo, modifica a los dos nombres, a los dos sustantivos “Procedures" y “Special", dentro de su conocimiento del uso de la lengua inglesa?

Respuesta: Mi opinión era que el adjetivo “Special" modifica “Procedures", pero no “Services".

Pregunta: O sea, ¿qué en la lengua inglesa, según está construida esa oración, esa es su interpretación, doctor?

Respuesta: Sí. Pero también según mi experiencia negociando contratos yo no hubiese permitido que la palabra “Special" estuviese ahí sin más explicación.

Pregunta: Sí ¿No se le ocurre a usted, doctor, que puede ocurrir con esa cláusula lo que ocurre con el “CPT”?

Respuesta: Es posible. No se cuál es la intención de la gente que redactó el contrato.

Pregunta: O sea, que es posible, entonces, que a base de su experiencia y de lo que dice el “CPT”, este Honorable Tribunal puede entender que esa frase ahí significa... son sinónimos, está usándose procedimientos o servicios especiales como señala el “CPT”, como usted ha dicho que se llaman... que no significan.

Respuesta: No me atrevería a llegar a esa conclusión, porque la frase servicios especiales o “Special Services ” no me tendrían ningún significado como médico de Sala de Emergencia.

Pregunta: Veo. Oiga, doctor, la Cláusula # 1 del contrato, de la compensación, ahí se habla de...

Pregunta: La palabra “Services” que hay ahí, doctor, ¿a qué usted entiende que se refiere?

Respuesta: En ese párrafo particular, me imagino que será la suma total de todo el trabajo que hagan los médicos en el hospital.

[...]

Pregunta: ¿y cómo se diferencia ese servicio que está... que aparece en la #1 con los servicios que se propone en la Cláusula #3, doctor? ¿Cómo usted los diferenciaría?

Respuesta: Yo pensaría que la palabra servicios en la Cláusula #1 se refiere a otras cosas que los médicos hacen, que no necesariamente facturarían.

[...]

Pregunta: Sí. Pero la pregunta es si es lo que está afirmando, doctor. Si lo que usted está afirmando es que 
*1023
esos “all services rendered by the physicians ”, como reza el Artículo 8-1, si usted entiende, si es su contención a base de su experiencia ésta de médico de Sala de Emergencia, que se refiere a servicios por los cuales el hospital no va a facturar, por servicios que van a hacer los médicos por los cuales no se va a facturar.

[...]

Pregunta: Sí. La pregunta es si esa Cláusula #1, su contención es que los médicos... que se le pagaban $20,000.00 a los médicos, $20,000.00 y pico a los médicos, por estar sentados en Sala de Emergencia sin darle ningún servicio a los pacientes.

Respuesta: No. Eso no es lo que... lo que...

Pregunta: Okay. ¿Qué servicios, doctor, se pagaban, según su experiencia, a base de ese contrato por esos $20,000.00 que recibían los pacientes? ¿Cuáles servicios eran esos?

Respuesta: Por eso, es como funciona una Sala de Emergencia. Cada paciente que entre tiene que ser entrevistado por mí y examinado por mí. Ese es el servicio primario que proveo como médico de Sala de Emergencia.

Pregunta: ¿Ese es al que usted se refiere que es cognoscitivo?

Respuesta: Es correcto. Y todo paciente recibe un código de servicio por ese trabajo cognoscitivo que hago.

Pregunta: Muy bien. Lo que quería era entender eso, doctor. Lo que quería era entender que la palabra servicio que hay ahí en el número 1 tiene la misma definición que el servicio que usted dijo del número 3, que se trata de cosas cognoscitivas que hacen los médicos. Ya... eso está... Eso lo tengo aclarado.

Respuesta: No lo interpreto así.

Pregunta: No lo interpreta así. ¿Entonces, los servicios cognoscitivos que hay en la Cláusula #1, “All services rendered”, es distinto a los servicios conno... a las acciones cognoscitivas de los servicios establecidos en el #3 ?

Respuesta: Lo que quiero decir es que los servicios cognoscitivos en el #3 caen dentro de la categoría más amplia de servicios en la #1.

Pregunta: O sea, ¿que la #3 cae dentro de la #1, es lo que usted está diciendo?

Respuesta: En términos del uso de la palabra “services” sí. ”

Testigo: William Leffingwell, perito de la parte apelada, especialista en lingüística.
(Directo del Ledo. Pérez, págs. 185-202)

“Pregunta: ¿En qué consistió ese estudio que usted hizo?

Respuesta: Bueno, ese estudio consiste de varias etapas, la primera etapa es la reacción inmediata de una persona que habla inglés, éste como vernáculo y eso se corrobora con...

Respuesta: Okey. Sí, el idioma se presta a la interpretación por una persona y en cuanto a teoría 
*1024
lingüística, la interpretación de idioma se basa en el uso por personas educadas que hablen (sic) el idioma como vernáculo... Y entonces esa reacción puede que “special” aplica de igual forma a “procedures” como a “services”. Pero para corroborarlo, hice un estudio basado en una metodología que (sic) usan los lingüistas y es una recopilación de ejemplos y una examinación de ese ejemplo dentro de su propio contexto. Si eso arroja luz sobre el significado, de la palabra, de la frase, del momento gramatical. Entonces hice ese estudio recopilando los ejemplos. Los ejemplos, todo y cada uno demostraba claramente que cuando hay un adjetivo con un sustantivo y una conjunción creada o... o en algunos casos en que tiene que no cambia prácticamente el significado, el adjetivo aplica de igual forma al primer sustantivo como al segundo. Si hubiera tres, al primero, segundo y tercero. Y eso fue la segunda etapa de mi estudio.

En la tercera etapa de mi estudio era explorar posibles alternativas. Si la intención del autor hubiese sido otra, ¿qué fórmula hubiese usado en la gramática inglés para expresarse con esa intención? Entonces exploré exhaustivamente tres alternativas y llegué a la conclusión de que sí existen (sic) claramente otras alternativas en inglés si un autor hubiese querido expresar otra intención y obligatoriamente hubiese tenido que usar otra alternativa para expresarse. Y si la mente como un ejercicio literario lingüístico, examiné otra parte del contrato, pero que lo que se llama “internal evidence”, una evidencia interna del uso de la misma frase si hubiese sido otra.

Respuesta: Esta data era simplemente para confirmar. Entonces, si uno encuentra en otra parte de un documento el uso de una frase, de una gramática, de un adjetivo, de propias palabras en una forma que claramente se presta a otra interpretación, entonces hay que re-examinar toda la base. En este caso no pude así. Todo uso fue consistente en cuanto al resto del documento. Pero eso es meramente para confirmar que no hubo una excepción en el uso, en la parte que examiné como parte principal.

Pregunta: Su conclusión, luego de ese estudio y ese análisis, cuál ha sido correcta.

Respuesta: Una conclusión contundente de que “special” aplica tanto a “services” como a “procedures” y que no hay otra interpretación posible, utilizando la gramática del inglés.

Contrainterrogatorio del Ledo. Mendoza

“Pregunta: Bien. Usted no sabe si la interpretación que usted le ha dado gramaticalmente a eso hace o no, sentido en el campo técnico de la medicina. ¿Eso, usted no puede opinar sobre eso?

Respuesta: En un sentido no, pero la premisa es que el documento que está examinando, que estaba firmado por la parte tenía sentido, pero si no tiene sentido, mi interpretación sigue siendo la misma, que la palabra “procedures” es una palabra absurda. La palabra “service”, “services" era una palabra absurda. “Special” aplicada igualmente, a la absurda “A” y ala absurda “B”.

[■■■]

Respuesta: Sí. Para documentar este trabajo, para cuestión de, sencillo; primero, que el objetivo hubiese sido puesto sobre el primero, sobre “services for special procedures” y eso hubiese obviado toda ambigüedad. Otra alternativa hubiese sido “special procedures and all services”, or “those services”. O una cosa por el estilo.

Pregunta: O sea, lo que usted me está diciendo, doctor, era, que ciertamente, en inglés correcto, habían alternativas para evitar la ambigüedad de esta frase que nos tiene aquí en el día de hoy porque una parte la interpreta de una forma y otra parte lo interpreta de otra.

Respuesta: El mero hecho de que alguien lo interprete de otra forma, no lo hace ambiguo. No es ambiguo. Si la intención hubiese sido como la parte que usted representa, el que fuera correcto y opinión profesional, 
*1025
hubiese usado otra frase, otro orden gramatical.

[■■■]

Pregunta: ...Le pregunto “or” es una conjunción, ¿correcto?

Respuesta: Sí.

Pregunta: ¿Y como conjunción, se utiliza para introducir alternativas? ¿Correcto?

Respuesta: En cierto modo sí.

Pregunta: Y, de hecho, en cierto modo también se utiliza correctamente para introducir la segunda de dos alternativas. ¿Correcto?

Respuesta: Sí.

[...]

Pregunta: ¿Pero este no es el idioma vernacular de las personas que redactaron el contrato? ¿ Verdad que no?

Respuesta: Desconozco.

Pregunta: Si las personas son puertorriqueñas...

Respuesta: Mi esposa es puertorriqueña y ella domina muy bien el inglés.

Pregunta: ¿Pero no es su idioma vernacular?

Respuesta: Y no es su idioma vernacular. ”

Según se desprende de lo transcrito y de la prueba “special procedures or services”, según usados en la cláusula 8 (3) del Emergency Physician's Agreement, objeto de la controversia, son sinónimos. No podemos entender que para el propósito de facturación, “procedure” y “services” fueran términos usados disyuntivamente, es decir, separado el uno del otro. Según su redacción, concluimos que para los efectos de la referida cláusula, los términos “services ” y “procedure” fueron utilizados indistintamente, para referirse a una sola cosa. De no haber sido así, procede que nos preguntemos, ¿porqué los apelantes esperaron tanto tiempo para reclamar lo alegadamente adeudado? Por otro lado, no podemos obviar el hecho que Medical Services aceptó haber participado de las negociaciones y estar de acuerdo con el contrato. De haber existido duda con la frase en controversia según redactada, hubo oportunidad suficiente para que durante las negociaciones y/o al realizarse posteriormente la enmienda del 25 de noviembre de 1988, las partes conformaran la redacción del contrato a la verdadera intención. Quedó aclarado además que en la práctica de la medicina es probable que el término “service” y “procedure” se utilicen indistintamente.
Además, en apoyo de la sentencia dictada también encontramos el hecho de que el Departamento de Salud Federal obligó a que se enmendara el contrato a los fines de establecer un tope máximo al incentivo a cobrase por la parte apelante. Lo que nos mueve a pensar igual que lo hizo el Tribunal, que de concluirse que el 65% a ser cobrado por concepto de incentivo, procedía por todos los procedimientos y servicios realizados, implicaría un incumplimiento con los parámetros establecidos por el Departamento de Salud.
También debemos tener presente que aunque el apelado denominare el recobro establecido en la cláusula *1026 número 8 inciso 1 del contrato, como el recobro por nómina, la realidad es que dicha cláusula indica que la suma de $20,414.66 a ser cobrada en años bisiestos, y la suma de $20,362.66 a ser cobrada en años regulares, se recibiría por todos los servicios rendidos por los médicos, sus asociados o sus empleados. Aun cuando los apelantes pretenden establecer que estos servicios no tienen nada que ver con los servicios de los que se habla en la cláusula tres, sus fundamentos no nos convencen. Por lo tanto, a nuestro juicio, por concepto de servicios prestados, ya la Corporación Medical Service, recibía la parte correspondiente.
En consideración a lo cual, determinamos que los errores señalados no fueron cometidos. En su consecuencia, confirmamos la Sentencia Parcial dictada por el Tribunal de Primera Instancia, Sala Superior de Ponce.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida I. Oquendo Graulau
Secretaria General