# 2006 DTA 129

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE CAGUAS**
**PANEL X**

EVELYN MORALES VÁZQUEZ
Recurrente

v.

RIO PIEDRAS ISUZU INC., DORAL LEASING
Recurridos

Núm. KLRA-06-00669

San Juan, Puerto Rico, a 26 de octubre de 2006

Panel integrado por su Presidenta, la Juez Pesante Martínez,
el Juez Escribano Medina y la Juez Hernández Torres

Pesante Martínez, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos, Evelyn Morales Vázquez (la parte recurrente), y nos solicita la revisión de cierta Resolución que fue dictada y notificada el 21 de julio de 2006 por el Departamentos de Asuntos del Consumidor (DACO). Mediante el referido dictamen, se declaró no ha lugar la solicitud de reconsideración que presentó la parte recurrente ante el DACO.

Valga adelantar que la parte recurrente había presentado su solicitud de reconsideración por razón de las determinaciones que sobre su querella plasmó el DACO en una resolución previa de 19 de junio de 2006, la cual, se notificó a las partes el 30 de junio. En la referida determinación previa, el DACO declaró con lugar la querella que presentó la parte recurrente. Ello, con el efecto de ordenarle al co-querellado, y aquí recurrido, Río Piedras Isuzu, Inc., que corrigiera ciertos defectos de un vehículo objeto de un contrato de arrendamiento o *leasing* que suscribió la parte recurrente con el también co-querellado, y aquí recurrido, Doral Bank (haciendo negocios como Doral Leasing).

No obstante lo anterior, en el mismo dictamen, el DACO desestimó las reclamaciones que la parte recurrente entabló en contra de este último - Doral Bank (Doral Leasing). Las reclamaciones en cuanto al Doral Bank redundaron en la alegación de que, mediando dolo, la referida institución financiera indujo a la parte recurrente a firmar un contrato de arrendamiento o *leasing* respecto a cierto vehículo, pero estando esta última bajo la creencia de que estaba firmando y consintiendo a los términos de un contrato de préstamo para obtener el financiamiento para la compraventa del vehículo.

Inconforme con el resultado de sus reclamos ante el DACO, la parte recurrente acudió ante nos señalando que erró el referido foro al haber emitido un dictamen que resulta: (1) contrario a las disposiciones que respecto al dolo contractual que contempla el Código Civil de Puerto Rico, 31 L.P.R.A. §3408; y (2) que no está sostenido con evidencia sustancial en el expediente administrativo considerado en su totalidad.

Habiendo examinado el expediente de este caso, y contando con el beneficio de la comparecencia de las partes involucradas, concluimos que procede confirmar el dictamen recurrido.

# I

Esbozamos una breve relación de los hechos e incidencias procesales de mayor relevancia a la resolución de este caso. Para ello, nos servimos principalmente de las determinaciones que realizó el DACO conforme a la prueba que se desfiló ante sí.

La parte recurrente visitó una sucursal del recurrido Doral Bank. Lo anterior con el objeto de tramitar el financiamiento para la compra de un vehículo de motor. El personal que le atendió le informó que la referida institución financiera no llevaba a cabo ese tipo de negocio. No obstante, le indicaron que sí realizaban contratos de arrendamiento o *leasing*. Según indica la parte recurrente en su recurso, esta información la recibió una vez la refirieron y ella se comunicó con el personal de otra división de la institución financiera antes referida, a saber, Doral Leasing.

En los documentos que obran en el expediente se hace referencia a que particularmente, el Sr. Javier Maysonet, gerente de ventas de Doral Bank, le explicó a la parte recurrente en qué consistía este tipo de contrato (*leasing*). En síntesis, le indicó que tendría que escoger del concesionario o *dealer* la unidad que le interesara, y luego debía llamarlo para informarle del precio del vehículo y el pronto que aportaría. Además, se le informó de que tendría que gestionar un seguro. En ocasión posterior se le advirtió de los términos particulares del contrato, a saber: el interés que aplicaría; la cantidad de plazos de pago; la inaplicabilidad de residual en su caso; y ello tomando en cuenta la suma que la parte recurrente dio como pronto.

En su alegato, explica el Doral Bank que el tipo de contrato que suscribió la parte recurrente con la referida institución financiera, pero en especial, la forma en que se tramita, es muy similar a la de un préstamo convencional para la compra de un vehículo de motor. En su caso, se aceptó un pronto pago por la unidad; y además, al momento de pagarse la última mensualidad, no se le requeriría el pago de un residual. Se indicó que la única diferencia entre un préstamo convencional y el *leasing* que suscribió la parte recurrente estriba que en el segundo, el título de propiedad del vehículo está a nombre de la institución financiera y no es hasta que se realiza el último pago que se traspasa la titularidad al deudor. No obstante, se indicó que con el préstamo convencional, el título del vehículo consta a nombre del deudor, aunque el banco retiene el título hasta que se salda la deuda.

Según la prueba desfilada, el DACO determinó que el hermano de la parte recurrente, el Sr. Iván Morales Vázquez, hizo las gestiones con el recurrido, Río Piedras Isuzu, Inc., en lo que respecta a la entrega del vehículo y la toma de firmas de los documentos correspondientes. Luego, Río Piedras Isuzu, Inc. remitió al Sr. Maysonet la orden de compra del vehículo, ello por haber sido informado de que el negocio se llevaría a cabo mediante Doral Bank.

De la prueba surgió que, en varias ocasiones, la parte recurrente le comentó a su hermano que el contrato era uno de *leasing* y que lo que ella deseaba era firmar un contrato de compraventa. Pero que por consejo de su hermano, ella estuvo de acuerdo finalmente con firmar el contrato de *leasing*.

De otra parte, se señaló que cuando se le entregó el vehículo a la parte recurrente, fue entrada ya la tarde, y que la parte recurrente sólo se percató de que el mismo no tenía cierto equipo (estribos y forros de los asientos). Entonces, el vehículo fue recogido por personal de Río Piedras Isuzu, Inc. para la instalación del referido equipo. Posteriormente, después de haberle sido entregado el vehículo, y cuando la parte recurrente se dispuso a lavar el mismo, se percató que el mismo tenía una abolladura en la puerta trasera y que el *bumper* estaba rayado (con una palabra escrita, la cual, aparentemente se intentó tapar con pintura).

Seguido, la parte recurrente presentó su querella ante DACO. Lo anterior, lo hizo originalmente sólo contra Río Piedras Isuzu, Inc. Se hizo constar en la querella que este último ofreció corregir los defectos, pero que la parte recurrente no lo aceptó. Esta última, más bien, solicitó que le cambiaran la unidad.

Posteriormente, el DACO envió a un técnico para que inspeccionara el vehículo. Como resultado de su inspección, el referido técnico confirmó lo alegado por la parte recurrente. A esos fines, indicó que en efecto el vehículo presentaba un rayazo en el *bumper* y un hoyo en la puerta trasera. Así pues, el técnico rindió su informe, en el cual indicó que el costo de la reparación de los defectos en cuestión ascendía a unos cuatrocientos ochenta y cuatro dólares ($484.00).

En ocasión posterior, compareció mediante moción la parte recurrente solicitando la enmienda de su querella. Ello, a los fines de incluir sus reclamaciones contra Doral Bank (Doral Leasing). Luego, se celebró la correspondiente vista ante el DACO. El referido foro plasmó sus determinaciones de hechos y conclusiones de derecho en el dictamen recurrido.

En síntesis, el DACO planteó que el caso se circunscribía a determinar: por un lado, si Doral Bank (Doral Leasing) incurrió en una práctica engañosa al alegadamente haber hecho que la parte recurrente adquiriera el vehículo mediante *leasing* cuando lo que deseaba era un préstamo convencional para financiar la compra del vehículo; y por otro lado, si hubo dolo en la venta del vehículo con los defectos antes descritos.

En relación a lo primero, y basándose en la prueba documental y testifical desfilada ante sí, el DACO determinó que: (1) la parte recurrente fue debidamente informada por el personal del Doral Bank (Doral Leasing) que lo que le podían ofrecer era un *leasing* y no un préstamo para la compra de vehículo; (2) que fue la parte recurrente la que solicitó al *dealer* (Río Piedras Isuzu, Inc.) que tramitara la venta del vehículo mediante Doral Bank; (3) que al momento de firmar el contrato, la parte recurrente le comentó a su hermano que lo que suscribiría era un *leasing*, pero que lo que quería era un contrato de préstamo para financiar la compra del vehículo; (4) no obstante lo anterior, que la parte recurrente, aún teniendo conocimiento del tipo de negocio que estaba suscribiendo, firmó los documentos del contrato de *leasing*. En suma, el DACO restó credibilidad al testimonio de la parte recurrente y no dio paso a su alegación de que firmó el contrato de *leasing* por haber sido inducida mediante engaño. A juicio del referido foro, la parte recurrente no probó su contención a esos fines.

De otra parte, el DACO sí concluyó que medió dolo por parte del recurrido Río Piedras Isuzu, Inc. El referido foro catalogó el dolo como incidental y no grave, por lo que le ordenó a la última a corregir los defectos del vehículo en un término determinado, o en su defecto, debía pagarle el costo de reparación según el estimado que indicó el técnico de la agencia en su informe de inspección.

Frente a esta determinación, la parte recurrente solicitó reconsideración. En resumen, levantó cuestionamientos relacionados a la apreciación de la prueba. En particular, planteó que el testimonio suyo y el de su hermano sostenía de manera contundente su contención a los efectos de que por creer y confiar en las explicaciones del Sr. Maysonet (gerente de Doral Bank), fue que obtuvo el convencimiento de que el contrato que suscribió era uno de compraventa, a pesar de que tanto en su título como en su contenido indicaba que era uno de *lease*.

En atención a su moción, el DACO emitió una Resolución en la que declinó reconsiderar su dictamen. En este dictamen, el DACO señaló de manera expresa que revisó la grabación de los procedimientos, más la prueba documental ofrecida por las partes. No obstante, agregó no pudo, sino concluir que sus determinaciones de hechos y conclusiones de derecho estaban sostenidas por la prueba. Más aún, indicó que no existía prueba en el récord que menoscabara, en primer lugar, el valor probatorio ni el peso que brindó a la prueba que aquilató; y en segundo lugar, la credibilidad que le mereció el testimonio de los testigos que declararon ante sí. Por ello, sostuvo su dictamen previo.

De esta determinación, acudió ante nos la parte recurrente en solicitud de revisión. En atención a sus argumentos, discutimos el derecho aplicable

## II

### A

Las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, por lo que el ejercicio de nuestra función revisora está limitado a determinar si la agencia actuó arbitraria, ilegal o tan irrazonablemente que su actuación constituyó un abuso de discreción. *Misión Ind. P.R. v. J.P. y A.A.A.,* 142 D.P.R. 656 (1997); *Reyes Salcedo v. Policía de P.R.,* 143 D.P.R. 85 (1997). Esto se cumple cuando se encuentra una base racional en el récord administrativo para sostener las conclusiones de la agencia, sin sustituir el criterio del tribunal por el de la agencia administrativa. *Misión Ind. P. R. v. J.P. y A.A.A., supra; Metropolitana, S.E. v. A.R.P.E.,* 138 D.P.R. 200 (1995).

Sobre el mismo particular, se ha reiterado que la norma en estos casos es que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo. *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 D.P.R. 70 (2000); *Domínguez v. Caguas Expressway Motors,* 148 D.P.R. 387 (1999); *T. JAC, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70 (1999). En suma, la intervención judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba; y (3) si las conclusiones de derecho del organismo administrativo son correctas. Sec. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como *"Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico",* 3 L.P.R.A. sec. 2175; *Otero Mercado v. Toyota de Puerto Rico Corp.,* res. el 3 de febrero de 2005, **2005 J.T.S. 13**; *P.R.T. C. v. R. Reg. Tel. de P. R.,* res. el 12 de junio de 2000, **2000 J.T.S. 98**; *Misión Ind. P.R. v. J.P. y A.A.A., supra.*

La evidencia sustancial para sostener la actuación administrativa es aquélla que una mente razonable puede aceptar como adecuada para sostener una conclusión. La intervención del Tribunal está limitada a evaluar si la decisión de la agencia es razonable y no si hizo una determinación correcta de los hechos ante su consideración. Si existe más de una interpretación razonable de los hechos, los tribunales sostendrán la decisión de la agencia y no sustituirán su criterio por el de ésta. Al revisar las determinaciones de hechos, la evidencia debe ser considerada en su totalidad. *Asoc. Vec. H. San Jorge v. U. Med. Corp., supra.*

### B

Conforme a nuestro ordenamiento jurídico, la existencia de un contrato se configura cuando concurren los siguientes elementos: (1) consentimiento de los contratantes, (2) objeto cierto que sea materia del contrato, (3) causa de la obligación que se establezca. Art. 1213 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3391; *Master Concrete Corp. v. Fraya,* 152 D.P.R. 616 (2000); *José Garriga Hijo, Inc. v. Cond. Marbella del Caribe Oeste,* 143 D.P.R. 927 (1997); *Quiñones López v. Manzano Posas,* 141 D.P.R. 139 (1996).

El consentimiento se manifiesta por la aceptación de una oferta sobre la cosa y causa del negocio. Art. 1214 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3401; *Vilá & Hnos., Inc. v. Owens Ill. de P.R.,* 117 D.P.R. 825, 834-835 (1986); *Prods. Tommy Muñiz v. COPAN,* 113 D.P.R. 517, 521 (1982). Ahora bien, el consentimiento prestado puede ser nulo cuando el mismo se ha producido por error, violencia, intimidación o dolo. Art. 1217 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3404; *Colón v. Promo Motor Imports, Inc.,* 144 D.P.R. 659 (1997).

Existe dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes, es inducido el otro a celebrar un contrato, que sin ellas, no hubiera hecho. Art. 1221 del Código Civil de Puerto Rico, 31 L. P.R.A. sec. 3408. El dolo puede cometerse mediante palabras o maquinaciones insidiosas o bien callando

respecto a una condición esencial del contrato. *Márquez v. Torres Campos*, 111 D.P.R. 854, 871 (1982); *Colón v. Promo Motor Imports, Inc., supra; Acosta & Rodas, Inc. v. PRAICO*, 112 D.P.R. 583, 617 (1982); *Canales v. Pan American*, 112 D.P.R. 329, 338-342 (1982); *Miranda Soto v. Mena Eró*, 109 D.P.R. 473, 478 (1980). Además, el dolo puede manifestarse en la contratación o en el curso de la consumación del contrato, cuando se omite consciente y voluntariamente cumplir con la obligación. *Colón v. Promo Motor Imports, Inc., supra; Márquez v. Torres Campos, supra.*

De otra parte, conviene aclarar que contrario a lo intimado en el texto del Art. 1217, *supra*, no todo tipo de dolo produce la nulidad del contrato. Para que produzca la nulidad del contrato, el dolo tiene que ser grave y no meramente incidental, y no haber sido utilizado por ambas partes. Art. 1222 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3409. El tipo de dolo con características de gravedad se ha denominado como el dolo causante. *Rivera v. Sucn. Díaz Luzunaris*, 70 D.P.R. 181, 185 (1949). Es el que causa, motiva, sirve de ocasión y lleva a celebrar el contrato de modo tal que sin él no se hubiera otorgado el mismo. *Colón v. Promo Motor Imports, Inc., supra.*

Por otro lado, el dolo incidental sólo da lugar a la indemnización de los daños y perjuicios ocasionados. Art. 1222, *supra; Id.* Ello es así, ya que este tipo de dolo no tiene una influencia decisiva en la esencia de la obligación. *Id.*

Valga añadir que el dolo no se presume, sino que tiene que ser establecido por la parte que alega su existencia. *Id.; Canales v. Pan American, supra.* Ahora bien, como cualquier otro elemento mental, el mismo no tiene que ser establecido directamente, sino que puede inferirse de las circunstancias presentes en el caso particular. El Tribunal Supremo de Puerto Rico ha aclarado, en este sentido, que debe considerarse la preparación académica de las partes, así como su condición social y económica y las relaciones y el tipo de negocio en que se ocupan. El dolo puede surgir del conjunto y evolución de circunstancias y manejos engañosos, más que de un solo hecho incidental. *Colón v. Promo Motor Imports, Inc., supra; Acosta & Rodas, Inc. v. PRAICO, supra; Miranda Soto v. Mena Eró, supra.*

Independientemente de la modalidad que se impute, sea por dolo en la formación del contrato como por dolo en el cumplimiento de la obligación, corresponde a quien reclama dicha conducta dolosa la responsabilidad de la prueba. *Colón v. Promo Motor Imports, Inc., supra; Canales v. Pan American, supra.* El dolo, es una cuestión de hecho que no se sustenta con la mera alegación del reclamante, sino que hace falta aportar prueba, la cual deberá ser valorada exclusivamente por el juzgador de los hechos. *Mayagüez Hilton Corp. v. Humberto Betancourt et al.*, res. el 19 de febrero de 2002, **2002 J.T.S. 29**.

Tomando en cuenta el derecho antes discutido, concluimos lo siguiente.

### III

En el caso de autos, luego de haber evaluado los argumentos de la parte recurrente, concluimos que no concurren razones que justifiquen nuestra intervención con las determinaciones del DACO. Esto es, estamos convencidos de que no se cometieron los errores señalados.

El referido foro dejó ver en su dictamen original, y confirmó en el dictamen que emitió en reconsideración, que sus determinaciones de hechos y conclusiones de derecho estaban sostenidas en la prueba documental que obra en el expediente. Así mismo expresó respecto a la prueba testifical que se desfiló ante sí y en relación a la credibilidad que le mereció uno y otro de los declarantes.

En particular, pudimos apreciar que en este caso, el testimonio de los agentes del recurrido, Doral Bank (Doral Leasing), le mereció entera credibilidad al foro recurrido. No así el testimonio prestado por la parte recurrente y su hermano. Tomamos cuenta además de que la parte recurrente le imputó dolo a Doral Bank

(Doral Leasing). No obstante, se limitó a fundamentar su contención con meras alegaciones. Lo anterior, principalmente atacando la credibilidad que rindió el DACO a la prueba testifical y aduciendo que su testimonio y el de su hermano era contundente a los efectos de establecer que fueron inducidos mediante dolo, engaño, y maquinaciones insidiosas a firmar el contrato de arrendamiento o *leasing*. Ello aun cuando conocía que lo que quería era suscribir un contrato de compraventa, y además, aun cuando advirtió previo a firmar el contrato que tanto el título como el contenido del referido documento expresaba términos propios de un contrato de arrendamiento o *leasing*.

La pretensión de la parte recurrente no encuentra apoyo en derecho. Como se desprende de la jurisprudencia, la concurrencia del dolo es una cuestión de hecho que no se sustenta con la mera alegación del reclamante, sino que hace falta aportar prueba al efecto. La parte recurrente falló en cumplir con la obligación afirmativa de presentar prueba para evidenciar el dolo que imputó al recurrido Doral Bank. De hecho, ni siquiera pudo apuntar la existencia de circunstancias que hicieran sospechar que la adjudicación de credibilidad que realizó el DACO, y que favoreció al recurrido Doral Bank, estuviera maculada de arbitrariedad, ilegalidad o irrazonabilidad de modo que pudiera tomarse por un abuso de discreción.

Por todo lo anterior, estimamos prudente rendir deferencia al dictamen del foro recurrido respecto al recurrido Doral Bank (Doral Leasing). Nos negamos a sustituir nuestro criterio por el del DACO. De hecho, también lo hacemos respecto a la determinación que se realizó sobre el recurrido, Río Piedras Isuzu, Inc.

En el caso particular de este último, entendemos que al haber entregado a la parte recurrente, un auto con las abolladuras y rallazos en el *bumper* y puerta trasera, y ello, entrada la tarde (casi de noche como indicó la parte recurrente), daba pie para inferir la concurrencia de dolo. Así lo hizo el DACO y así lo avalamos. También, estamos de acuerdo con el DACO en que el dolo que exhibió el recurrido Río Piedras Isuzu, Inc. fue uno incidental, entiéndase, que no recayó sobre aspectos esenciales del contrato.

Por tanto, no procede la pretensión de la parte recurrente de escapar de la responsabilidad que contrajo: primero, al haber dado el visto bueno al referido recurrido para que tramitara con el Doral Bank la orden de compra del vehículo; segundo, al haber endosado el recibo de entrega y aceptación del vehículo; y tercero, al haber firmado el contrato de *leasing* de cuyos términos se desprende de manera patente y reiterada que el negocio objeto del documento en cuestión no es uno de compraventa, sino un arrendamiento.

Abonando a lo anterior, hay que destacar que como bien se reitera en la doctrina, el dolo incidental no es óbice para rescindir los contratos. Pero sí justifica que se obligue al que lo empleó a indemnizar en daños y perjuicios al perjudicado. En virtud de lo anterior, nos negamos igualmente a intervenir con la determinación del DACO en lo que respecta a la orden que impuso al recurrido, Río Piedras Isuzu, Inc., de reparar los defectos del vehículo objeto del contrato en controversia dentro de cierto término, o en su defecto, de pagar la suma estimada para corregir los defectos, según lo recomendó el técnico de la referida agencia tras inspeccionar el vehículo en cuestión. Sobre lo anterior, sostenemos la adecuacidad del remedio concedido por el DACO.

## IV

En mérito de lo anterior, confirmamos el dictamen recurrido. Además, ordenamos al recurrido, Río Piedras Isuzu a cumplir con lo ordenádole por el DACO dentro del término de veinte (20) días de recibir copia de la notificación de nuestro dictamen.

Lo acordó el Tribunal y lo certifica la Secretaria Interina del Tribunal de Apelaciones.                    ·

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones