# 2006 DTA 9

**TRIBUNAL DE CIRCUITO DE APELACIONES
REGIÓN JUDICIAL DE BAYAMÓN
PANEL VIII**

FIRAS ISSA ABU JAMIL
Recurrido

v.

IDELFONSO MARIO FRAGELA LEZCANO, CARMEN MARÍA ZAYAS SUÁREZ
Y LA SOC. LEGAL DE GAN. COMPUESTA POR AMBOS
Peticionarios

Núm. KLCE-2005-01243

San Juan, Puerto Rico, a 24 de octubre de 2005

Panel integrado por su Presidente, el Juez Arbona Lago,
el Juez Miranda De Hostos y la Juez Pabón Charneco

Arbona Lago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante contrato privado otorgado el 21 de mayo de 2003, el Sr. Firas Issa Abu Jamil (Firas) tomó en arrendamiento por término de 5 años un local comercial sito en Paseo Ambar J-2719 de Levittown, Toa Baja, P. R., también descrito por el demandante como *"Avenida Boulevard de Levittown, Toa Baja"*, entonces propiedad del arrendador Sr. Ildefonso Mario Fragela Lezcano, (Fragela).

En el contrato escrito se dispuso que el término de 5 años *"... será improrrogable"* (Ap. pág. 17) y *"...EL ARRENDATARIO no podrá hacerle cambios a la estructura sin el previo consentimiento de EL ARRENDADOR, en caso de que éste así lo autori[c]e, cualquier mejora realizada quedará a beneficio de éste sin que tenga que pagar suma alguna por las mismas. Las mejoras que puedan removerse sin causar daños al inmueble podrán ser removidas."*

Según surge de autos, el Sr. Firas habilitó el local para instalar allí una pizzería que comenzó operaciones al público el 27 de agosto de 2003. El contrato de arrendamiento continúa actualmente y vence el 21 de mayo de 2008.

Entre el 21 de mayo de 2003 (firma del contrato de arrendamiento) y apertura al público de la pizzería (27 de agosto de 2003), el Sr. Firas y el Sr. Fragela mantuvieron conversaciones respecto a la compraventa del inmueble, en esos 3 meses se hicieron oferta y contra oferta. El dueño del inmueble hizo oferta de venta por la suma de $200,000.00. El Sr. Firas contra ofreció la suma de $175,000.00. Debido a una diferencia de $25,000.00 no pudieron arribar a un acuerdo de compraventa.

Posteriormente, el Sr. Fragela vendió el inmueble al Sr. Carlos Alvarado Encarnación y su esposa Alice Net Carlo, por la suma de $205,000.00. Los compradores a su vez lo hipotecaron por $232,200.00 a favor del First Bank P.R. (Contestación A Escrito de *Certiorari*, págs. 2-3 y su anejo 5). No surge de autos que con ello se afectó el contrato de arrendamiento, el que continúa vigente entre el inquilino Firas y los nuevos dueños del local.

El 9 de septiembre de 2004, es decir a los 15 meses aproximados del inicio del arrendamiento, el Sr. Firas demandó al Sr. Fragela ante el Tribunal de Primera Instancia, Sala Superior de Bayamón (DAC2004-3191) (TPI) en reclamo de *"Incumplimiento de Contrato y Daños y Perjuicios"*. Tal acción en daños no se predica en que el nuevo dueño del inmueble se niegue a respetar el contrato de arrendamiento acorde a sus términos. De acuerdo a las alegaciones de la demanda, la acción se fundamenta en que el Sr. Fragela negoció de mala fe con el Sr. Firas. A tal respecto, se efectúan las siguientes alegaciones en la demanda DAC2004-3191:

*"[...]*

*11. El demandado negoció de mala fe con el demandante, ya que le **sugirió al demandante y ante testigos, que el inmueble era para él.** El demandado hizo comentarios tales como **"sigue trabajando en el edificio porque la propiedad es para ti".** (Énfasis suplido)*

*12. La Parte Demandante invirtió $50,000.00 en las mejoras estructurales permanentes, equipos de pizzería, muebles, aire acondicionado, decoración, y otros.*

*13. La promesa del Demandado generó una obligación voluntaria y unilateral. El Demandado en la fase de contratación, rompió en forma injustificada las negociaciones, las que se consideraban como al ilícito y constituye un quebrantamiento de la buena fe.*

*14. La buena fe es un principio que impone a la parte una lealtad recíproca en las negociaciones. El vendedor nunca fue honesto y se aprovechó de las mejoras hechas al edificio. Los contratos que se revisten de todos los elementos esenciales, se perfeccionan por el mero consentimiento y obligación, no sólo al cumplimiento de lo expresamente pactado. La buena fe rige los tratos preliminares entre los contratantes. El quebrantamiento de este principio genera responsabilidad en la etapa de las negociaciones.*

*15. En el presente caso se configura la mala fe, fraude, engaño y dolo, por lo que la Parte Demandada está sujeta a la indemnización de los daños y perjuicios causados por el incumplimiento de la obligación. [...]*

*[...]*

*18. El propósito económico que persigue la figura del tanteo, consiste en otorgarle a una persona la facultad de adquirir determinado bien con preferencia frente a cualquier posible comprador, en el caso de que el **propietario decida enajenarlo**.*

*19. En el presente caso, la promesa o contenido verbal no tenía términos fijos, ni tenía condiciones; la promesa fue una unilateral que surgió del Demandado al decir "esto es para ti". El Demandado se obligó a vender sin haberse tomado en consideración el precio de venta.*

*20. En este caso se configuraron los requisitos del contrato.*

*a. Consentimiento de contratantes capaces.*

*b. Objeto cierto que sea materia del contrato.*

*c. Causa de la obligación que se establezca.*

*21. La Parte Demandada en base al Artículo de Incumplimiento Doloso (Artículo 1054 y 1065), quedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurra en dolo, negligencia y morosidad.*

*[...]"*. (Ap. págs. 2-3)

También surge del pliego de la demanda (Ap., págs. 1-4) que el Sr. Firas había solicitado que en el contrato de arrendamiento se incluyera "*...una Opción de Compra del Inmueble la cual fue rechazada por el Sr. Frajela [sic], alegando que se podía negociar después*". (Ap. pág. 1)

Ante tal cuadro litigioso, en o para el 4 de marzo de 2005, ampliada el 25 de abril de 2005, el Sr. Fragela solicitó del TPI sentencia desestimatoria por las alegaciones de la demanda, al amparo de la Regla 10.3 de Procedimiento Civil, 32 LPRA Ap. III, R. 10.3. A ello se opuso el Sr. Firas en escrito firmado el 11 de marzo, pero presentado ante el TPI el 13 de abril de 2005 (Ap. pág. 21).

En la "*Moción Solicitando Que se Dicte Sentencia al Amparo de la Regla 10.3 de Procedimiento Civil*" del 4 de marzo de 2005 (Ap. pág. 8 y su "*Moción Complementaria ...*") del 25 de abril de 2005 (Ap. pág. 58), el Sr. Fragela expone de la siguiente forma:

*"[...]*

*El contrato suscrito por las partes habla por sí mismo; fue firmado por la parte demandante libre y voluntariamente y en ningún momento hace referencia a ningún negocio jurídico distinto al arrendamiento pactado. En consecuencia, el remedio que la parte demandante solicita, no procede en derecho. El reclamante solicita que se le pague por un incumplimiento que no existe; ya que en ningún momento las partes pactaron un contrato de opción de compraventa del inmueble objeto de este pleito. El único acuerdo pactado entre las partes fue el arrendamiento, cuya copia se ha acompañado con la presente Moción. Tampoco se le ha causado daño alguno al demandante, toda vez que al día de hoy, éste continúa disfrutando el arrendamiento de la propiedad en controversia.*

*En síntesis, el demandante pretende que se le indemnice por una alegada promesa opción de venta, que nunca fue contemplada en el acuerdo suscrito entre las partes y alega un incumplimiento de dicha promesa, la cual nunca existió, **fundamentándose en unas alegaciones que no ha podido sustentar. Es decir, no sólo las propias alegaciones dejan de exponer un reclamo que justifique la concesión de un remedio, sino que, posteriormente, la parte demandante le notificó a la parte demandada un documento titulado "Contestación al Primer Pliego de Interrogatorios y Producción de Documentos", en adelante "Contestación a Primer Interrogatorio", el cual no sustenta las alegaciones de la Demanda. [---]"** (Énfasis suplido)*

El planteamiento al amparo de la Regla 10.3 de Procedimiento Civil, *supra*, se afianza en que el único contrato que existió entre las partes fue y es uno de arrendamiento de local comercial urbano, y respecto al cual el Sr. Firas no ha sufrido ni reclama daño alguno en la demanda DAC-2004-3191.

La oposición del Sr. Firas a la solicitud sumaria para desestimar la demanda, incursiona en varias figuras del derecho civil, que menciona, como: **1) la opción a compra, 2) la mala fe *incontraendo*, 3) el tanteo, y 4) el pre-contrato, contrato de promesa o la promesa unilateral**.

Así las cosas, mediante Resolución del 12 de agosto de 2005, el hermano foro de primera instancia dictó Resolución, notificada el 16 de igual mes y año, en la que desestimó la Moción de Sentencia Sumaria presentada por el Sr. Fragela, de la siguiente manera:

*"[...]*

*En el caso de autos hay una controversia de hecho que impide su disposición a través del mecanismo de sentencia por las alegaciones de la Regla 10.3 de Procedimiento Civil, supra, o a través del mecanismo de sentencia sumaria de la Regla 36 de Procedimiento Civil, supra. De las alegaciones y los documentos acompañados por las partes a sus respectivos escritos, surge que hay controversia real sustancial en cuanto a si efectivamente se dio un **contrato verbal de opción de compra** entre los comparecientes. (Énfasis suplido)*

*En tales circunstancias, el factor credibilidad juega un papel importante en el resultado de la reclamación y cualesquiera de las versiones expuestas de los hechos podría razonablemente ser sostenida. Por lo tanto, es necesario que dilucidemos el hecho material en controversia, luego de que las partes prueben sus alegaciones durante la vista en su fondo. [...]"*

No conforme, el Sr. Frajela acude en la petición de *Certiorari* del epígrafe e imputa al TPI incidir de la siguiente forma:

*"[...] Erró el Honorable Tribunal de Primera Instancia al no dictar Sentencia al amparo de la Regla 10.3 de Procedimiento Civil cuando de las propias alegaciones de la parte demandante, aquí recurrida, y del propio texto de la Resolución surge claramente que no existe causa de acción contra el demandado, aquí peticionario, ni*

*tampoco controversia alguna de hecho. Además como cuestión de derecho, procedía que se dictara sentencia por las alegaciones a favor de la parte apelante. [...]"*

El Sr. Firas compareció en autos mediante extenso alegato en oposición, incluyendo apéndice, que tituló *"Contestación a Escrito de Certiorari"*.

## Exposición y Análisis

### I

Es de rigor comenzar por señalar que del pliego de la demanda y del escrito de la parte demandante en oposición a que el TPI desestime la demanda en forma sumaria y posteriormente, de la *"Contestación A Escrito de Certiorari"* presentado por el Sr. Firas, es forzoso llegar a la conclusión que la demanda realmente nace y está predicada en el hecho de que el Sr. Fragela **vendió** a un tercero el inmueble en que radica el negocio de Pizzería del Sr. Firas y no en el previo negocio jurídico del contrato de arrendamiento, suscrito entre ambos el 21 de mayo de 2003 y vigente hasta el 2008. El Sr. Firas no tiene reclamo alguno contra el Sr. Fragela respecto al contrato de arrendamiento vigente.

En la demanda no se plantea ni reclama daño o compensación alguna *in rem*, derivada de la no compra del inmueble de referencia, por parte del Sr. Firas, es decir por la plusvalía del inmueble. La partida de $50,000.00 corresponde a lo invertido por el Sr. Firas para operar en el local su negocio de pizzería, y la suma genérica de $60,000.00 se estimó como *quántum* reparador en *"daños y perjuicios ocasionados por la parte demandada"*, sin ulterior explicación.

Aunque de la mayoría de las alegaciones de la demanda sugiere que el reclamo está predicado en la culpa aquiliana del Artículo 1802 del Código Civil, 31 LPRA 5141, y no en una obligación contractual, en las alegaciones 19 y 20, el demandante hace alusión a la violación contractual cuando expone que:

*"19. En el presente caso, la promesa o contenido verbal no tenía términos fijos, ni tenía condiciones; la promesa fue una unilateral que surgió del Demandado al decir "esto es para ti". El Demandado se obligó a vender sin haberse tomado en consideración el precio de venta.*

*20. En este caso se configuraron los requisitos del contrato.*

*a. Consentimiento de contratantes capaces.*

*b. Objeto cierto que se materia del contrato.*

*c. Causa de la obligación que se establezca."*

### II
### Opción a Compra:

Ante tal cuadro de alegaciones, el hermano foro de instancia entendió que entre los aquí litigantes existía una *"controversia real sustancial en cuanto a si efectivamente se dio un <u>contrato</u> verbal de opción de compra entre los comparecientes"*. (Énfasis suplido) (Ap. pág. 67)

Como se sabe, se denomina contrato de opción al convenio por el cual una parte llamada concedente, prominente u optatario, concede a la otra, denominada optante, por tiempo fijo y **conforme a determinadas condiciones** la facultad -- que se deja exclusivamente al arbitrio del optante -- de decidir respecto a la celebración de un contrato principal. *Rosa Valentín v. Vázquez Lozada*, 103 DPR 796, 806-812 (1975); *Del Toro v. Blasini*,

96 DPR 676, (1968). Es un contrato *sui generis* con sustantividad propia y perfiles específicos, muy similar al contrato de promesa unilateral de venta aceptada, del cual sólo lo separa el requisito de la prima o el precio que pueda estipularse en este último por la adquisición del derecho a elegir dentro de plazo concedido, entre la ejecución o el desistimiento de la compraventa proyectada. *Pérez v. Sanpedro,* 86 DPR 526 (1962). Es un contrato consensual mediante el cual el optatario o promitente queda obligado a vender determinada cosa por pre-determinado o predeterminable precio (precio cierto), en tiempo limitado o limitable, mientras que el optante se reserva por tiempo limitado el derecho exclusivo de decidir si ante tales consideraciones de cosa y precio, finalmente se obliga en un contrato de naturaleza personal que sólo puede convertirse en derecho real cuando el optante ejercita la opción en tiempo hábil y luego se da la tradición en el subsiguiente contrato de compraventa. El contrato de opción no contempla ulterior negociación en cuanto a cosa y precio, pues se tratan de las "*determinadas condiciones*".

No es una norma específicamente reglada en el Código Civil, por lo que ha sido la jurisprudencia la que ha delimitado sus contornos. ■

También se ha dicho que "*La opción es la posibilidad de perfeccionar un contrato previamente delimitado.*" Puig Brutau, *Fundamentos de Derecho Civil*, Tomo II, Vol. II, Bosch, Barcelona, 2da Ed., 1982, a la pág. 20.

Por tanto, **constando de las propias alegaciones de la demanda** que el demandante, Sr. Firas, interesó, sin éxito, que en el contrato de arrendamiento se incluyere "*...una Opción de Compra del Inmueble*", lo que fue rechazado por el Sr. Ildefonso Mario Fragela Lezcano, el contrato de arrendamiento finalmente se redactó y suscribió sin incluir tal derecho a opción. El Sr. Firas también reconoce y acepta que la "***promesa... no tenía términos fijos, ni tenía condiciones... fue una unilateral... [donde el Sr. Fragela] se obligó a vender sin haberse tomado en consideración el precio de venta***". (Alegación 19 de la demanda, Ap. pág. 3). Ante todo ello, resulta forzoso concluir, aun en etapa de alegaciones, que en tal ambiente jurídico no puede subsistir ni se puede establecer un contrato de opción de compra, aunque se den por admitidas como ciertas tales alegaciones de la demanda.

Concluimos que, a falta de acuerdo de partes en cuanto a precio, según surge de las propias alegaciones de la demanda tomadas como ciertas, no es posible concluir que de ello surge o se puede probar la existencia de un contrato de opción a compra. Maxime, cuando el propio demandante señala en la demanda que el trató de incluir la opción a compra del inmueble como parte del contrato de arrendamiento y no logró acuerdo al respecto.

Por otro lado, desde un principio, el Sr. Firas conocía que para operar la pizzería por los 5 años del arrendamiento antes acordado, tendría que efectuar mejoras al local y adquirir los equipos necesarios, lo cual hizo y comenzó a operar el negocio.

"*[Tal] [o]bligación contractual jamás quedó acreditada. Para que exista el contrato deben concurrir los esenciales requisitos de consentimiento de los contratantes, objeto cierto que sea materia del contrato y causa de la obligación que se establezca. – Art. 1213 – Jamás hubo acuerdo o convenio alguno [respecto a contrato de opción a compra].*" *Ramírez Ortiz v. Gautier Benítez,* 87 DPR 497, 523(1963).

### III
**Mala fe** *incontraendo:*

Tal planteamiento se predica de la siguiente manera:

"*[...] prometió al demandante que el local o propiedad era para el Sr. Firas Issa Abu Jamil.*

*En base a la promesa del Sr. Idelfonso Mario Fragela Lezcano, el demandante invirtió $60,000.00 en las*

*mejoras arquitectónicas y decorativas en el local arrendado por un término de 5años.*

*El Sr. Fragela Lezcano, una vez terminada la obra y abrieron las puertas al público el 27 de agosto de 2003, mandó a tasar la propiedad y tomó retratos del inmueble.*

*En varias ocasiones le dijo al demandante que iban a firmar y que le reiteraba al demandante haciendo comentarios como: **"puedes cambiar todo" y "porque esto es tuyo".*** (énfasis suplido)

*La parte peticionaria-demandada alega en sus hechos, que la parte peticionaria sostiene que entre las partes no hubo contrato alguno distinto al arrendamiento que se suscribe el 21 de mayo de 2003 en las oficinas del Lcdo. Jesús M. Cepeda Rivera. En el record del caso se reitera la parte demandante, que hubo negociaciones posterior al contrato en la que la parte demandada ofrecía el local a la venta por la cantidad de $200,000.00 y que la parte demandante en la negociación ofreció la cantidad de $175,000.00; la parte demandada no continuó con la negociación para llegar a un acuerdo y vendió el inmueble sin notificación a la parte demandante. [...]* (Contestación A Escrito de *Certiorari*, pág. 2)

*[...] El Sr. Carlos Rafael Alvarado Encarnación, el inversionista del Sr. Fragela Lezcano, previo a la apertura del negocio, compró el inmueble en fecha de 3 de octubre de 2003, Escritura de Compraventa #559 ante el Notario Angel Rolán Prado.*

*La intención del Sr. Fragela Lezcano era vender el inmueble a un precio mayor, luego de que el Sr. Firas Abu Yamil hiciera las mejoras en el local antes mencionado.*

*En la parte del informe de conferencia preliminar entre abogados, el demandante reitera que se comenzaron unas negociaciones y que el Sr. Fragela Lezcano le dijo al Sr. Firás que le vendía el local en $200,000.00. El Sr. Juan Acevedo es testigo de dicha oferta. El Sr. Issa Salih Abu Jamil, padre del Sr. Firas Abu Jamil, ofreció $175,000.00 en la primera y única negociación.*

*El Sr. Idelfonso Mario Fragela Lezcano no continuó con la negociación con el Sr. Issa Salih Abu Jamil, padre del Sr. Firas Abu Jamil.*

*En relación a la buena fe en las negociaciones entre partes se impone un arquetipo de conducta social que implica la carga de lealtad recíproca de conducta valorable y exigible.* (Contestación A Escrito de *Certiorari*, pág. 3)

De una lectura de lo señalado surge claramente que con relación al arrendamiento la inversión de *"$60,000"*, █ para las mejoras *"arquitectónicas y decorativas"* se hicieron para operar el negocio de pizzas del Sr. Firas en el local arrendado. Que entre el Sr. Fragela y el Sr. Firas existió una sola negociación respecto a la compraventa del inmueble y luego de tal oferta y contra oferta para la compraventa del inmueble, no se arribó a un acuerdo.

Los demás señalamientos, como el que el Sr. Alvarado Encarnación adquirió el local *"previo a la apertura del negocio"* y que la intención del Sr. Fragela era vender con el local las mejoras, resultan planteamientos erróneos y meramente conclusorios en el récord. Primeramente, porque reiteradamente el Sr. Firas ha expuesto en autos que la apertura de su pizzería ocurrió el 27 de agosto de 2003 y la compraventa entre el Sr. Fragela y el matrimonio Alvarado-Net (por $205,000.00) ocurrió el 3 de octubre de 2003. Segundo, como bien lo señala el Sr. Firas en la anterior cita, las *"mejoras arquitectónicas y decorativas"* las hizo para operar la pizzería, respecto a lo cual suscribió el contrato de arrendamiento a 5 años, y conforme a la cláusula SEPTIMA del contrato acordó que: *"**Las mejoras que puedan removerse sin causar daño al inmueble podrán ser removidas"*** y las demás quedarán para beneficio del inmueble al final del contrato. (Ap. pág. 18) Por lo tanto, es de concluir que el Sr. Fragela no puede enajenar el 3 de octubre de 2003, las mejoras que podrán pasar al local en el año 2008, al final del

arrendamiento, ni los equipos del negocio necesarios para operar la pizzería, que al final del contrato el Sr. Firas puede sacar del local.

Se tratan de alegaciones y planteamientos que realmente *"... dejan de exponer una reclamación que justifique la concesión de un remedio"* (Reg. 10.2 (5) de Procedimiento Civil, 32 LPRA Ap. III, R. 10.2 (5); y a su vez por su naturaleza no son capaz de ser enmedados.

El Sr. Firas pactó y conoce que conforme al contrato podrá utilizar su inversión en el negocio y a la conclusión retirar las mejoras y equipos si causar daño al local, por lo que no cuenta con causa de acción al respecto en este momento, en que continúa expoliando su negocio.

Por otro lado, *"... sabido es que nadie está obligado a contratar..."*; por lo tanto, *"... las partes no están obligadas a proseguir con las negociaciones hasta perfeccionar el contrato, sino que están en libertad de contraer el vínculo o de retirarse, según convenga a sus mejores intereses"*. Prods. Tommy Muñiz, v. COPAN, 113 DPR 517, 526 (1982).

*"Ciertamente, la aceptación de la oferta es el procedimiento normal para el perfeccionamiento del contrato. En esa forma se manifiesta el consentimiento de las partes que, como sabemos, es requisito esencial para la existencia del contrato"*. Prods. Tommy Muñiz v. COPAN, supra, pág. 521.

Por lo tanto, una vez concluida la oferta de $200,000.00 y la contra oferta de $175,000.00, no hubo contrato y no existía obligación de parte y parte para seguir haciendo ofertas o contra ofertas. Como cuestión de realidad, en autos tan siquiera consta alegado que el Sr. Firas efectuó una segunda contra oferta, entre la contra oferta original y el 3 de octubre de 2003, en que el Sr. Fragela vendió a un tercero. Ante la totalidad de las alegaciones de la demanda, tomadas como ciertas, no se puede concluir como cuestión de derecho, la alegada mala fe contractual.

## IV
**El Tanteo:**

Entre las varias formas jurídicas que el Sr. Firas esgrime contra el Sr. Fragela, también se encuentra *"el tanteo"*. De autos surge que ello no ocurrió dentro del contrato de arrendamiento suscrito el 21 de mayo de 2003, y tampoco en la demanda se alega de alguna otra forma o manera.

*"El tanteo es el derecho de preferencia que una persona tiene para la adquisición de una cosa determinada, en caso de que su dueño quiera enajenarla, y por consiguiente, la facultad que le asiste para que, en este último caso, se lo manifieste así al propietario, indicándole el precio y condiciones de la enajenación, si no se han pactado previamente. Se trata de una obligación unilateral personal mediante la cual el dueño de la cosa viene obligado a notificar al titular del tanteo la enajenación proyectada. De esta manera, se faculta al titular del derecho para decidir si adquiere o no una cosa con preferencia a los demás interesados, si algunos, en adquirir la misma.*

*Como se puede apreciar, por su naturaleza, el derecho de tanteo opera previo a la enajenación y faculta a su titular a adquirir una cosa que va a ser enajenada por su propietario, con preferencia a cualquier otro, **por el mismo precio que este abonaría, es decir por el tanto ofrecido a un tercero**. A diferencia del derecho de opción donde la iniciativa de aceptar es del optante, en el derecho a tanteo, el titular mismo no tiene la iniciativa, sino que ha de esperar que la haya tomado la otra parte; entiéndase, que el concedente del derecho haya decidido enajenar."* (Citas suprimidas, énfasis suplido) González v. Sucn. Cruz Cruz, 163 DPR (2004), **2004 J.T.S. 201**.

Nada en las constancias de la demanda o de los argumentos del Sr. Firas tan siquiera intima alegar que en algún momento el Sr. Firas estuvo dispuesto a pagar por el inmueble algún precio pre-establecido en algún

acuerdo o contrato, o el precio que otro comprador *bona fide* ofreciere por la propiedad. Todo lo contrario, de las alegaciones sólo consta que el Sr. Firas estuvo dispuesto a pagar $175,000.00, luego de que se le ofreciera el inmueble por $200,000.00. No es hasta 5 semanas luego, que el inmueble se vende a un tercero por $205,000.00.

En este litigio no existe indicio alguno de alegación de tanteo, "... *es decir, por el tanteo ofrecido a un tercero*". *González v. Sucn. Cruz Cruz, supra,* que permita tan siquiera considerarlo.

Se trata de un planteamiento en el vacío, que de las propias alegaciones de la demanda, bien hechas y tomadas como ciertas, no se puede sostener en derecho.

**V**

**Promesa Unilateral de Voluntad:**

Debemos acudir por último a la figura del cuasicontrato, específicamente la de la promesa unilateral de voluntad, para examinarla *vis–a–vis* las alegaciones de la demanda.

Recientemente, en *Ortiz Rivera v. P.R.T. Co.*, 162 DPR ____ (2004), **2004 J.T.S. 139**, pág. 111, se dijo:

*"En nuestro ordenamiento jurídico, la declaración unilateral de voluntad es reconocida como fuente de obligaciones. Mediante ésta, una persona puede obligarse, **por su sola voluntad** (sólo consultando sus intereses y deseos), **a dar, hacer o no hacer alguna cosa a favor de otra persona, siempre y cuando su intención de obligarse sea clara** (no sea ambigua ni dudosa), **surja de un acto jurídico idoneo**, y no sea contraria a la ley, la moral ni el orden público. Ramírez Ortiz v. Gautier Benítez, 87 D.P.R. 497, 521 (1963).*

*Desde Ramírez Ortiz v. Gautier Benítez, supra, este Tribunal reconoció que el auge y tráfico comercial ameritaban que se reconociera la posibilidad de dar plena eficacia a una serie de situaciones en las que una sola persona pretendía obligarse, tal como es el caso de la declaración unilateral de voluntad. En esa ocasión, delineamos los elementos constitutivos de esta importante figuera."*

En este caso se trató de un documento suscrito el 24 de julio de 1996 por la corporación Telephone Technology System, Inc. (TTS), entregado por adelantado a vecinos de una urbanización en que dicha empresa luego efectuó trabajos consistentes en excavaciones y cambios de líneas telefónicas soterradas. El texto es el siguiente:

*"A: Vecinos de los Bloques 4, 20, 21, 22, 23 y 24*
*Urb. Miraflores, Bayamón*

*Ref. Realización de trabajos en sus propiedades.*

*Sirva la presente para informarles que nuestra compañía Telephone Technology Systems, Inc., Contratista de la Telefónica está realizando trabajos de cambio de líneas telefónicas en sus propiedades según las especificaciones de la P.R.T.C.*

*Cualquier daño a sus propiedades será repuesto por nosotros.*

*Para cualquier información adicional pueden comunicarse al 797-4140 con este servidor.*

*Atentamente,*

*José L. Lugo*

*Coordinador"*

En apelación, el Tribunal Supremo dispuso:

*"[...] resolvemos que la carta enviada por Telephone Technology Systems, Inc., a los vecinos de la urbanización Miraflores constituyó una declaración unilateral de voluntad que tuvo el efecto de vincularla. Asimismo, resolvemos que el término aplicable para ejercitar la acción en reclamo de los derechos que se deriven del incumplimiento con dicha obligación, es el de 15 años establecido en el Artículo 1864 del Código Civil de Puerto Rico, 31 LPRA § 5294." Ortiz Rivera v. P.R.T.C.O., supra,* **2004 JTS 139**, pág. 116.

Contrario a la extensa y específica declaración de voluntad hecha el 24 de julio de 1996 por TTS a favor de todos los vecinos de la antes referida urbanización, para que permitieran sin impedimento u obstrucción a TTS trabajar en los patios residenciales, en el ya citado caso en *Ramírez Ortiz v. Gautier Benítez, supra,* págs. 504-508, (nota al calce), el Tribunal Supremo resolvió que las siguientes fraces no constituyen una declaración unilateral de voluntad, a saber:

*"Cualquier cosa que suceda, yo respondo"; "que se hacía responsable de los daños y perjuicios que sufriera el demandante"*

En *Ramírez Ortiz v. Gautier Benítez, supra,* se trató de un accidente de circulación en el cual el Sr. Ramírez Ortiz sufrió serios daños cuando el Sr. Eliezer Gautier Benítez (hermano del Sr. Rosendo Gautier Benítez) le atropelló con un automóvil, en la Avenida Ponce de León, en Santurce, P.R. Informado de ello, Rosendo accedió a entregar $20.00 para una transfusión de sangre y alegadamente ante terceros pronunció lo arriba citado.

Posteriormente, los hermanos Gautier Benítez fueron demandados por el Sr. Pascual Ramírez Ortiz en cobro de compensación por daños y perjuicios. El entonces Tribunal Superior de Puerto Rico dictó sentencia a favor del demandante, de la que sólo apeló el Sr. Rosendo Gautier Benítez. A Eliezer se le reclamó como causante de los daños y a su hermano Rosendo como emisor de una declaración unilateral de voluntad, a los mismos efectos.

Luego de una interesante exégesis, el Tribunal Supremo señaló:

*"Se demanda a éste [Rosendo Gautier Benítez] por una alegada culpa aquiliana; se le condena por "su obligación contractual." A juicio nuestro, ni por la primera, ni por la segunda razón, podía exigírsele responsabilidad a Rosendo Gautier."*

Tal pronunciamiento del Tribunal Supremo se fundamenta en que Sr. Eliézer Gautier Benítez no trabajaba para su hermano Rosendo al momento del accidente (por tanto no hay responsabilidad aquiliana) y tampoco existió causa o motivo para concluir que entre el damnificado y Rosendo existió vínculo alguno contractual ante tales imprecisas manifestaciones, tomado como cierto lo alegado. *Ramírez Ortiz v. Gautier Benítez,* supra, pág. 523.

Tampoco es posible, ante los hechos bien alegados en la demanda DAC2004-3191 que nos ocupa, encontrar culpa aquiliana (Art. 1802 del C.c.) contra el Sr. Fragela, cuando el propio demandante confiesa en la demanda, como queda antes dicho, que la inversión por la cual reclama (mejoras estructurales permanentes, equipos de pizzería, muebles, aire acondicionado, decoración y otros) consiste, precisamente de facilidades y equipo que actualmente utiliza en su negocio (Ap. pág. 2) y de la cláusula séptima del contrato de arrendamiento consta que a la terminación contractual las podrá retirar del local, salvo las que al removerse causen daños al inmueble. Es también de señalar que en la cláusula novena del mismo contrato de arrendamiento el inquilino se obligó, como es natural, a cuidar del inmueble y a entregarlo a la terminación del contrato en las mismas condiciones en que lo recibe, excepto el deterioro natural. (Ap. pág. 52). Por tanto, en autos no se alega y tampoco se puede concluir de

otro modo, que las mejoras hechas correspondían y tenía como base las alegadas manifestaciones. Al igual que ocurrió en *Ramírez Ortiz v. Gautier Benítez, supra*, no hay aquí reciprocidad entre alegada manifestación y alegada inversión en la pizzería, puesto que lo segundo es pre-existente y responde al arrendamiento del local para la explotación del negocio interesado.

**Si al Sr. Firas no se le ha violentado su interés contractual y explota para su beneficio el local y equipo de la pizzería, por lo que no puede reclamar a nadie la devolución del costo de tales mejoras, a la vez que las disfruta e utiliza en el negocio.** Se trata de alegaciones encontradas y excluyentes, que se cancelan mutuamente. Igual ocurre con la genérica reclamación de $60,000.00, en resarcimiento de innominados daños y perjuicios, derivados de idéntica situación.

Por otro lado, la obligación arrendataria contractual, respecto a tales mejoras no ha variado para el Sr. Firas, mientras se le respete su derecho a permanecer en el local conforme al contrato de arrendamiento, y ello nada tiene que ver con quién sea el titular dominical del inmueble.

Finalmente, el Sr. Firas expone, en las alegaciones 19, 20 y 21 de su demanda, lo siguiente:

*"19. En el presente caso, la promesa o contenido verbal no tenía términos fijos, ni tenía condiciones; la promesa fue una unilateral que surgió del Demandado al decir "esto es para ti". El Demandado se obligó a vender sin haberse tomado en consideración el precio de venta.*

*20. En este caso se configuraron los requisitos del contrato.*

*a. Consentimiento de contratantes capaces.*

*b. Objeto que sea materia del contrato.*

*c. Causa de la obligación que se establezca.*

21. *La Parte Demandada, en base al Artículo de Incumplimiento Doloso (Artículo 1054 y 1065), queda sujeta a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurra en dolo, negligencia y morosidad."* (Ap. pág. 3) (énfasis suplido)

Tales alegaciones no configuran una declaración unilateral de voluntad, contrato alguno y mucho menos incumplimiento doloso. Veamos:

*"La declaración de voluntad unilateral que la ciencia jurídica estima vinculante es la promesa o expresión de voluntad unilateral, autónoma, gratuita, revocable, no aceptada, por la que, con certeza, nos imponemos la firma obligación de dar, hacer o no hacer alguna cosa en provecho de otro, capaz conferir a éste el derecho a exigir su cumplimiento o el de resarcirse de los consecuentes daños y perjuicios que hubiere realmente sufrido por lo que hiciera con vistas a dicha promesa y realmente inducido por ella. Ramírez Ortiz v. Gautier Benítez, supra*, pág. 508.

En la alegación 19 de la demanda se enuncia que el Sr. Fragela unilateralmente se obligó a vender *"... sin haber tomado en consideración el precio de venta"*; se trató de una promesa *"... verbal [que] no tenía términos fijos, ni tenía condiciones."*

Como se sabe, la *"... obligación a vender..."* requiere, precisamente, de términos y condiciones acordados y el factor principalmente del precio no puede ser impuesto; ha de ser predeterminado o determinable. *"Por ello, el precio es el elemento más característico de la compraventa. ..."*; de lo contrario ... sería simulada", *Reyes v.*

*Jusinos,* 116 DPR 275, 285 (1985).

> *Por el contrato de compra y venta, uno de los contratantes se obliga a entregar una cosa determinada y el otro a pagar por ella un precio cierto, en dinero o signo que lo represente.* Art. 1334 Cc. 1930, 31 LPRA 3741)

> *Para que el precio se tenga por cierto bastará que lo sea con referencia a otra cosa cierta, o que se deje su señalamiento al arbitrio de persona determinada.*

> *Si ésta no pudiera o no quisiere señalarlo, quedará ineficaz el contrato. Art. 1336 Cc. 1930, 31 LPRA 3743.*

> *El señalamiento del precio no podrá nunca dejarse al arbitrio de uno de los contratantes.* Art. 1338 Cc. 31 LPRA 3745.

Alegar la existencia de una *"promesa"* que *"... no tenía términos fijos, ni tenía condiciones"* y que *"el Demandado se obligó a vender sin haberse tomado en consideración el precio de venta"*, como lo hace el Demandante en la referida causa DAC2004-3191, equivale a alegar en forma insuficiente para merecer algún remedio en ley, puesto ello es sinónimo de *"promesa desconocida"* y *"compraventa sin precio cierto"*, lo que es ineficaz en derecho.

Más aún, no existe contrato sin causa cierta o determinable. La existencia de un contrato requiere de la existencia de tres elementos indispensables: (1) consentimiento de los contratantes, (2) objeto cierto del contrato, (3) causa de la obligación, 31 LPRA sec. 3391; *Garriga, Hijo, Inc. v. Cond. Marbella,* 143 DPR 927, 932 n. 3 (1997); *Quiñones López v. Manzano Posas,* 141 DPR 139, 154 (1996).

Como queda ya dicho, dentro del ámbito del derecho civil, *"nadie está obligado a contratar"*. Como tampoco lo está *"... a proseguir con las negociaciones hasta perfeccionar el contrato"*, Prods. *Tommy Muñiz v. COPAN,* 113 DPR 517, 526 (1982), por lo que tampoco se incurre en *"... dolo, negligencia y morosidad..."* ante tales circunstancias. No estamos ante una válida y vinculante declaración unilateral de voluntad, aún y cuando tomáramos como ciertas las fraces antes señaladas.

## VI

**Sentencia Sumaria:**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. III, R. 10.2, atiende al mecanismo de la desestimación y permite que un demandado solicite del tribunal la desestimación de la demanda en su contra, cuando ésta no expone *"una reclamación que justifique la concesión de un remedio"*. A los fines exclusivos de tal solicitud, el tribunal está obligado a tomar como ciertos todos los hechos bien alegados en la demanda. *Dorante v. Wrangler of P.R.,* 145 DPR 408 (1998). Para prevalecer, el promovente de la moción tiene que demostrar que la demanda, tal y como está redactada y tomando como ciertos los hechos bien alegados, no expone una reclamación que justifique la concesión de un remedio y que no es susceptible de ser enmendada a tal efecto. *Pressure Vessels of Puerto v. Empire Gas,* 137 DPR 497 (1994); *Ramos Lozada v. Orientalist Rattan Furniture,* 130 DPR 712 (1992); *Unisys v. Ramallo,* 128 DPR 842 (1991); *Romero Arroyo v. E.L.A.,* 127 DPR 724.

En otras palabras, al entender en una moción desestimatoria bajo la Regla 10.2(5) de Procedimiento Civil, *supra*, es necesario precisar respecto a los hechos correctamente alegados y examinar los elementos que configuran la, o las respectivas causas de acción, para luego determinar si procede la desestimación de la demanda por dejar ésta de exponer hechos que justifiquen la concesión de un remedio. *Pressure Vessels v. Empire Gas de P.R., supra,* a la pág. 432. La demanda y sus alegaciones se interpretarán de la manera más favorable a la parte demandante, y la demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualesquiera de los hechos allí alegados y

que pueda probar. *Dorante v. Wrangler of P.R., supra,* a la pág. 857; *Pressure Vessels v. Empire .Gas de P.R., supra,* a la pág. 431 Sólo cuando la razón de pedir sea improcedente bajo supuesto alguno de derecho concebible dentro del marco amplio de referencia del litigio y por lo tanto la demanda tampoco sea susceptible de ser enmendada, procede desestimar. *Figueroa v. Tribunal Superior,* 88 DPR 122, 124 (1963). Es deber de los tribunales considerar si a la luz de la situación más favorable al demandante y resolviendo toda duda a favor de éste, la demanda puede ser suficiente para constituir una reclamación válida que amerite ir a juicio. *Pressure Vessels P.R. v. Empire Gas P.R., supra; Unisys v. Ramallo Brothers, supra.*

Ahora bien, cuando en una moción de desestimación como la del caso de marras, se expusieran alegaciones de hechos importantes y pertinentes (*"materiales"*) no contenidas en la demanda, la moción también deberá considerarse al amparo de la Regla 36 de Procedimiento Civil, 32 LPRA Ap. III, R. 36.

La conversión de una moción de desestimación a una de sentencia sumaria es discrecional y se tomará si con ello se facilita la disposición del asunto ante el Tribunal. Cuando no proceda el dictamen sumario al amparo de las alegaciones bien hechas, tomadas como correctas, debido a que existen en litigio controversias de hechos importantes y pertinentes (*"materiales"*) que obliguen a celebrar una vista en su fondo para adjudicar grados de credibilidad, el tribunal denegaría tanto la conversión de la moción de desestimación a una de sentencia sumaria, como la concesión de esta última. *Torres Capeles v. Rivera Alejandro,* 143 D.P.R. 300, 309 (1997).

Como se sabe, la sentencia sumaria, gobernada por la Regla 36 de Procedimiento Civil, *supra,* también constituye un mecanismo procesal discrecional y extraordinario cuyo propósito es facilitar la solución justa, rápida y económica de aquellos litigios civiles que no presenten controversias genuinas de hechos importantes y pertinentes; razón por la cual no ameritan la celebración de un juicio en su fondo y pueden adjudicarse implementando la norma de ley referente a hechos no disputados. *Pilot Life Ins. Co. v. Crespo Martínez,* 136 DPR 624, 632 (1994). Únicamente se concederá el dictamen sumario cuando la evidencia que se presente junto a la moción, establezca con claridad la existencia de un derecho a favor de parte en el litigio. Es reiterada la doctrina al efecto de que mediante dicho mecanismo también se busca obtener un remedio rápido y eficaz, en casos en que queda demostrado que sólo es menester adjudicar el derecho sobre hechos importantes y pertinentes (*"materiales"*) que no están en litigio en la causa. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994); *Revlon v. Las Américas Trust Co.,* 135 DPR 363, 376 (1994).

De tal modo y en cumplimiento con el primer postulado del ordenamiento procesal civil, la disposición por la vía sumaria persigue aligerar la tramitación de toda causa civil, bien mediante sentencia parcial o total, sin celebrar una vista en los méritos para adjudicar credibilidad, precisamente cuando de los documentos no refutados conste que realmente no existen controversias de hechos sobre aspectos medulares y que sólo resta aplicar el derecho. *PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra; Caquías v. Asoc. Res. Mansiones de Río Piedras,* 134 DPR 181, 216 (1993); *Consejo Tit. Cond. Parkside v. MGIC Fin. Corp.,* 128 DPR 538, 548 (1991); *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 279 (1990).

En tal exégesis se tomarán en consideración las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, y luego de quedar claro que del conjunto consta que no hay controversia real sustancial en cuanto a ningún hecho importante y pertinente (*"material"*) como queda dicho, y que también surja que como cuestión de derecho conste que también debe dictarse sentencia a favor de alguna parte en el litigio aunque no sea ésta la que haya solicitado el remedio sumario. *Neca Mortgage Corp. v. A & W Developers S.E.,* 137 DPR 860 (1995); *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 720 (1986).

Entendemos y resolvemos que aun tomadas por totalmente ciertas, como lo requiere la Regla 10.2 de Procedimiento Civil, *supra,* así como la Regla 36 de Procedimiento Civil, *supra,* tales manifestaciones, a saber: ***"sigue trabajando en el edificio porque la propiedad es para ti"***, *"puedes cambiarlo todo"*, *"porque esto es*

*tuyo*"; al igual que ocurrió en *Ramírez Ortiz v. Gautier Benítez, supra*, págs. 504-508 (nota al calce), con lo allí expuesto; a saber: ***"Cualquier cosa que suceda yo respondo" "que se hacía responsable de los daños y perjuicios que sufriera el demandante"***, no constituye vínculo contractual como declaración unilateral, por iguales razones.

En ambos casos porque:

*"Considerando todas las circunstancias concurrentes, esas manifestaciones eran insuficientes para dejar establecida una obligación unilateral vinculante y, mucho menos, una obligación contractual. El dar o atribuir a esas manifestaciones, (aceptando, desde luego, que las mismas se hicieron) un alcance legal o consecuencia jurídica que no podían tener o surtir, y condenar al codemandado a reparar un daño que no causó, es un grave error que amerita la revocación del fallo respecto al codemandado Rosendo Gautier Benítez." Ramírez Ortiz v. Gautier Benítez, supra*, págs. 525–526.

Más aún, en el caso del epígrafe, consta del conjunto de alegaciones y demás constancias de autos que las mencionadas mejoras de $50,000.00, son y siguen siendo propiedad del Sr. Firas, las utiliza en la explotación de su negocio. En su momento, el valor no depreciado lo podrá vender o remover (en cuanto no afecte la estructura del edificio – según contrató) por lo que al presente no **sufre daño alguno** por el cual pueda sostener una reclamación en daños, bien sea *Ex – delito* o *Ex – contrato*. El hecho de que el inmueble cambie de titular, mientras se le respete el término contractual del arrendamiento del local, no afecta ni puede afectar el propósito original de la inversión, que no es otro que la explotación comercial de la pizzería por el tiempo pactado.

El reclamo del Sr. Firas, no importa como se conduzca o predique, es uno que solamente puede incoarse en reclamo de daños y perjuicios, fundamentado en la pérdida de la inversión hecha para poder habilitar un negocio de pizzas en cierto local; y así lo plantea el demandante en el expediente DAC2004-3191.

Ahora bien, en las mismas alegaciones de la demanda y del mismo expediente DAC2004-3191, consta indubitadamente que el demandante, Sr. Firas, efectuó tal inversión acorde a los términos negociados en el contrato de arrendamiento suscrito con el Sr. Fragela, y que ha de vencer en el 2008.

¿Cómo es entonces posible que el Sr. Firas pueda reclamar a alguien que le reembolse, precisamente por lo que constituye parte del capital de trabajo de su negocio, cuando nadie le priva de continuar operándolo, según contratado en el Arrendamiento?

*"[...] El caso presentaba una controversia de derecho; no había cuestiones de hechos relevantes que dilucidar. Procedía que el tribunal de instancia dictara sentencia sumaria. En paráfrasis de lo resuelto en Zachry Internacional v. Tribunal Superior, 104 DPR 267, 271 (1975), los autos ante nuestra consideración revelan que el producto neto y final sometido con la solicitud de sentencia sumaria constituia un planteamiento de estricto derecho." Tello, Rivera v. Eastern Airlines, 119 DPR 83 (1987); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 DPR 714 (1986).*

*McCrillis v. Aut. Navieras de P.R.,* 123 DPR 113, 124 (1989).

No se cumple propósito alguno con permitir que este litigio continúe causando erogaciones económicas a los litigantes y abultando el ya recargado calendario del hermano tribunal de instancia.

**Dictamen**

Se expide el auto de *Certiorari* solicitado y se revoca la resolución recurrida. En su lugar dictamos sentencia al amparo de las disposiciones de la Regla 10.2 y 36 de Procedimiento Civil, 32 LPRA, Ap. III, R.

10.2 y 36, desestimando totalmente la demanda.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones