Brau Ramírez, Juez Ponente
*972 TEXTO COMPLETO DE LA SENTENCIA
I
Se trata de un pleito sobre desahucio instado ante el Tribunal de Primera Instancia, Sala Superior de Carolina, por los apelantes Hilka Rodríguez Vizcarrondo, Ray y Walter Rodríguez Osorio, Marilia y Gloria Siaca Rodríguez contra los esposos apelados Carl Leyva Ramos y Maribel Romero Merced.
Los apelantes son los sucesores de los esposos Antonio Rodríguez Allende y Gloria Vizcarrondo Rodríguez. Los esposos Rodríguez Vizcarrondo eran los padres de la apelante Hilka Rodríguez Vizcarrondo y abuelos de los demás apelantes. 
El pleito está relacionado con una finca propiedad de los apelantes ubicada en el Barrio Medianía Baja de Loíza, en la que enclava un negocio de estación de gasolina. La descripción del inmueble es la siguiente:

“RÚSTICA: Parcela de terreno producto de agrupación de ciertas fincas localizadas en el Barrio Medianía Baja del término municipal de Loíza, compuesta de cuatro mil metros cuadrados (4,000.00 m/c), en lindes por el Oeste, en cincuenta metros (50.00 m) con la Carretera Estatal Número Ciento Ochenta y Cinco (185); por el Este, Norte y Sur, en cincuenta (50.00 m), ochenta (80.00 m) y ochenta (80.00 m) metros respectivamente, con terrenos de la finca principal de la cual fue segregada, propiedad hoy de Ramón R. Guas, antes Clemente Fernández Ortiz.

Enclava en dicho solar un edificio construido de bloques de hormigón con piso y techo de concreto armado que consta de dos locales comerciales, uno que mide veinte pies de frente por veinte pies de fondo denominado Local “A” y se destina a Estación de Gasolina, y otro denominado Local “B” y que mide treinta pies de frente por treinta pies de fondo, inmediato y unido al Local “A ”, destinado al negocio de restaurant con dos kioscos rústicos y un salón comedor abierto adyacente al mismo formando parte de él. Tiene mirador y bloques de techo de zinc que mide quince pies por dieciséis pies. ”

Además de los Locales A y B mencionados en la descripción del inmueble, del récord se desprende que en la segunda planta de la edificación había un pequeño apartamento o mirador.
La propiedad pertenece a los causantes de los apelantes, los esposos Rodríguez Vizcarrondo. El 21 de septiembre de 1997, los esposos Rodríguez Vizcarrondo le arrendaron el negocio de estación de gasolina ubicado en el solar (designado en la descripción del inmueble como “Local A”) a los esposos Israel Benitez Naranjo e Isabel Nevárez Robles, mediante la Escritura Pública Núm. 39 otorgada en Loíza ante el Notario Orlando González Hernández.
Las partes acordaron que el arrendamiento se extendería por diez años, hasta el 31 de diciembre de 2008. El canon de arrendamiento acordado fue de $2,500 mensuales durante los primeros cinco años y $3,000 durante los últimos cinco años del contrato.
El contrato de arrendamiento le concedió a los arrendatarios la autoridad para hacer mejoras en la propiedad y para subarrendar o ceder el contrato de arrendamiento.
A la fecha en que se otorgó el contrato, el Local B de la finca, que había estado dedicado a un negocio de restaurante, estaba desocupado. El Sr. Benitez y su esposa tampoco ocuparon el mirador.
El Sr. Benitez tenía experiencia previa en la operación de estaciones de gasolina. Cuando tomó posesión del local arrendado, el Sr. Benitez se percató que el espacio no era el más adecuado. Se le ocurrió que sería más conveniente alquilar también el Local B, pues de esa forma podía evitar que dicho local fuese arrendado a otra *973 persona que pudiese estorbar su operación de la estación de gasolina, y podría además ampliar la estación y establecer un mini-market.
El Sr. Benitez se comunicó con el Sr. Rodríguez Allende para discutir la posibilidad de modificar los términos del contrato de arrendamiento. Le habló sobre su plan para aumentar el espacio que se utilizaba como estación de gasolina y hacer ciertas remodelaciones y alteraciones a la propiedad, con el fin de hacerla más productiva. Luego de negociar los aspectos pertinentes, las partes modificaron verbalmente el contrato para incluir en el arrendamiento el espacio del Local B y aumentar el canon de arrendamiento de $2,500 a $3,000 mensuales. Este acuerdo no incluyó el mirador, el cual aparentemente permaneció desocupado.
Con el consentimiento del arrendador, el Sr. Benitez hizo varias mejoras a la propiedad arrendada. Eliminó parte de una pared que dividía el Local A del B y agrandó el espacio utilizado como oficina integrando parte del Local B para hacer un mini-market. Añadió bombas de gasolina y convirtió el espacio restante del Local B en un almacén para aceites y productos relacionados a la operación de la estación de gasolina.
El Sr. Benitez operó la estación por varios años. En o cerca del año 2000, decidió vender la llave del negocio y ceder su derecho de arrendamiento, lo cual estaba autorizado a hacer por los términos del contrato. Para esta fecha, el Sr. Rodríguez Allende había muerto.
Luego de otros trámites, el Sr. Benitez acordó venderle su negocio a los apelados, por la cantidad de $375,000.00. Los apelados también se comunicaron con la Sra. Vizcarrondo y con los herederos del Sr. Rodríguez Allende para confirmar la viabilidad de la cesión del contrato del Sr. Benitez.
El 18 de noviembre de 2000, mediante una escritura juramentada ante el Notario Edwin Santos Baerga, los apelados, la Sra. Vizcarrondo y los apelantes otorgaron un “Precontrato de Arrendamiento y Autorización de Traspaso de los Derechos del Contrato Otorgado de Arrendamiento de la Estación de Gasolina y sus Facilidades” (en adelante, “Precontrato”).
A diferencia del contrato de arrendamiento inicialmente otorgado por los causantes de la parte apelante y el Sr. Benitez el 21 de septiembre de 1997, donde se había hecho constar que éste solamente arrendaba la estación de gasolina (Local A), en el primer párrafo del Precontrato se describió el inmueble de los apelantes y, a renglón seguido, se expresó que los apelantes comparecían como parte “arrendadora de la propiedad descrita en el párrafo primero”. Para esta fecha, el Sr. Benitez y su esposa ocupaban los locales A y B de la propiedad, pero no el mirador, el que continuaba desocupado.
El Precontrato expresaba que los apelados y el Sr. Benitez y su esposa habían acordado otorgar un “contrato de cesión de arrendamiento ... también conocido como venta de llave del arrendamiento.” Los apelantes convinieron a que los apelados adquirieran del Sr. Benitez “el contrato de arrendamiento o llave de la estación de gasolina ..., con todos los derechos, títulos, privilegios, obligaciones, cláusulas y condiciones conferidos y disfrutados durante el contrato actual. ”
Las partes acordaron extender el arrendamiento por diez años adicionales, hasta 2018. Los apelados convinieron a invertir la cantidad de $50,000 o más en mejoras a la propiedad. Se acordó que éstos retendrían el derecho de poder ceder la llave.
El Precontrato contemplaba que las partes renegociaran las cláusulas y condiciones del contrato inicial al vencimiento del plazo diez años. El contrato disponía, en este sentido, que:

“La renegociación del arrendamiento será dieciséis meses (16) antes del vencimiento del contrato. Si nada se pactase al advenir el decimoquinto mes anterior a la fecha de vencimiento del contrato, se entenderá 
*974
renovado el mismo bajo las mismas cláusulas y condiciones del arrendamiento original. ”

Los apelantes convinieron que los apelados tendrían el derecho preferente en cuanto a la compra, cesión o traspaso del inmueble o en cualquier transacción que implicase su enajenación.
En la última cláusula del Precontrato, la Sra. Vizcarrondo y los apelantes expresaron que:

“Se da[n] por enterad[os] de que [los apelados] otorgar[án] un nuevo contrato de arrendamiento basado en los acuerdos establecidos en el presente contrato].] Dicho contrato será inscrito en el Registro de la Propiedad e incluirá todas las cláusulas acordadas en el presente contrato y todas las cláusulas del vigente contrato de arrendamiento que no entran en contradicción con los acuerdos aquí establecidos. ”

El 28 de enero de 2001, mediante la Escritura Núm. Uno otorgada en Loíza ante el Notario Público Edwin Santos Baerga, los esposos Benitez Nevárez les vendieron la llave de su negocio a los apelados. Al igual que se hizo reflejar en el Precontrato otorgado entre la parte apelante y los apelados, en esta escritura, el Sr. Benitez y su esposa representaron que ellos eran arrendatarios de la propiedad completa de los apelantes.
Los esposos Benitez Nevárez convinieron, a cambio del precio pactado de $375,000.00, cederle a los apelados “el contrato de arrendamiento o llave de la estación de gasolina enclavada en la finca descrita... con todos los derechos, títulos, privilegios, obligaciones, cláusulas y condiciones conferidos y disfrutados durante el presente contrato...
Los apelados tomaron posesión del local y empezaron a pagar el mismo canon mensual de $3,000.00 mensuales que la parte apelante había convenido con el Sr. Benitez y su esposa. Contrario a lo contemplado en el Precontrato, las partes no otorgaron ningún otro contrato de arrendamiento, sino que los apelados simplemente ocuparon la posición del Sr. Benitez y su esposa con respecto al contrato de arrendamiento que éstos mantenían con los apelantes.
Según lo acordado, los apelados comenzaron a realizar mejoras dirigidas a modernizar y aumentar la productividad de la estación de gasolina y su mini-market. Específicamente, las mejoras realizadas por los apelados consistieron en incrementar la capacidad eléctrica de la estación, remodelar la fachada, arreglar y extender el techo de la pista, y en la instalación de dos bombas de gasolina adicionales y una de diesel y de un tanque de combustible diesel.
La realización de estas mejoras conllevó la ocupación de áreas adicionales de la propiedad, particularmente para la instalación de las nuevas bombas de gasolina y el tanque de diesel. Los apelados no pagaron ninguna cantidad adicional por estos espacios, porque entendían que estaban comprendidos en el arrendamiento. De primera intención, los apelantes tampoco protestaron por esta situación.
Luego de que los apelados tomaran posesión de la propiedad, las partes llegaron a un acuerdo verbal para que los apelados también arrendaran el mirador que estaba en la parte superior de la estación de gasolina, y que permanecía vacío. El Sr. Benitez y su esposa no habían tomado posesión de este mirador y, por lo tanto, tampoco lo habían ocupado los apelados. Aparentemente, la Sra. Vizcarrondo no quería que el espacio permaneciera vacante por temor a que fuese vandalizado. Las partes acordaron que los apelados lo arrendarían por un canon mensual de $150.00. Esta cantidad era adicional al canon que los apelados pagaban a la parte apelante por el arrendamiento de los locales A y B.
Posteriormente, los apelados subarrendaron el mirador a un tercero por el mismo canon mensual de $150.00 que habían convenido con los apelantes.
*975 Poco tiempo después, los apelantes empezaron a mostrar insatisfacción con el negocio que habían hecho con los apelados. El 9 de octubre de 2001, los apelantes enviaron a los apelados una carta suscrita por su abogado en la que indicaron su deseo de dar por terminado el contrato de arrendamiento entre las partes. Los apelantes invitaron a los apelados a una reunión para renegociar los términos del arrendamiento. Los apelantes expresaron que de no asistir los apelados a la reunión, los apelantes entenderían que los apelados carecían de interés en el contrato y procederían a solicitarles el desalojo de la propiedad.
Los apelados asistieron a la reunión convocada. Las partes intentaron llegar a un acuerdo, pero no tuvierou éxito.
El 12 de agosto de 2002, los apelantes le enviaron una nueva misiva a los apelados en la que por primera vez alegaban que el contrato en virtud del cual los apelados utilizaban el local donde antes estaba el restaurante y las áreas donde estaba el tanque de diesel y las dos bombas de gasolina, era un contrato verbal de arrendamiento cuyo término de vigencia era de mes a mes. Los apelantes expresaron que ellos habían decidido dar por terminado este aspecto del negocio entre las partes. Los apelados se rehusaron a lo anterior.
En octubre de 2002, los apelantes instaron la presente demanda de desahucio contra los apelados ante el Tribunal de Primera Instancia, Sala Superior de Carolina, en la que solicitaron el desahucio de los apelados de las áreas donde estaba el antiguo restaurante o Local B, el mirador, el espacio para dos bombas de gasolina y el espacio donde estaba el tanque de diesel. 
Los apelados contestaron la demanda y negaron las alegaciones. Alegaron que ellos ocupaban la propiedad por virtud de la cesión del contrato otorgado por los apelantes a favor de los esposos Benitez Nevárez. Los apelados presentaron, además, una reconvención por los daños y perjuicios ocasionados por la reclamación de los demandantes.
Posteriormente, las partes entraron en negociaciones para resolver amigablemente sus diferencias. A comienzos de 2003, las partes llegaron a un acuerdo tentativo, el que posteriormente resultó ineficaz. 
En mayo de 2003, los apelantes presentaron una demanda de desahucio contra el subarrendatario del mirador, FPE2003-0323. Esta demanda fue declarada con lugar por el Tribunal el 4 de junio de 2003, decisión que fue confirmada por este foro, caso KLAN-2003-00798, mediante sentencia emitida el 18 de noviembre de 2003. 
Luego de otros incidentes procesales, el Tribunal celebró la vista del caso. Ambas partes tuvieron la oportunidad de presentar prueba en apoyo de sus respectivas contenciones. Entre otra prueba, los apelados presentaron el testimonio del Sr. Benitez, quien declaró sobre el contenido de sus acuerdos con los apelantes.
A base de la prueba desfilada, el 11 de junio de 2007, el Tribunal de Primera Instancia dictó la sentencia apelada y declaró sin lugar la demanda de desahucio.
En su sentencia, el Tribunal concluyó que el documento suscrito por las partes el 18 de noviembre de 2000 constituía un contrato de arrendamiento, y no un mero negocio preparatorio, según alegado por los apelantes.
El Tribunal expresó:

“La realidad es que mediante el pacto suscrito por las partes, ambos quedaron obligados recíprocamente entre sí. Los demandantes se obligaron a arrendarles a los demandados la estación de gasolina bajo los términos, cláusulas y condiciones del contrato original de arrendamiento según enmendado por el [Precontrato] y según la operaba el arrendatario al momento de los demandados comprarle la llave. ”

*976 Resulta forzoso concluir que el contrato otorgado entre las partes no se trató de una opción de arrendamiento o contrato preparatorio a un contrato de arrendamiento...
¿Cuál fue, entonces el negocio jurídico que otorgaron las partes? Concluimos que se trata de un contrato de arrendamiento que contenía enmiendas al contrato de arrendamiento original que otorgaron los demandados.
El Tribunal también descartó la versión de los apelantes a los efectos de que el contrato de arrendamiento entre las partes estaba limitado solamente al arrendamiento del Local A y que no incluían las porciones del inmueble en controversia.
El Tribunal expresó, sobre este particular:

“De los testimonios y la prueba presentada por las partes este Tribual concluye que la estación de gasolina que los demandados les arrendaron a los demandantes era la que el arrendatario anterior estaba operando al momento del acuerdo de arrendamiento entre los demandantes y demandados. Simple y llanamente, ese era el negocio.

Tal y como se estableció en las determinaciones de hechos probados ante este Tribunal, los causahabientes de los demandantes autorizaron al anterior arrendatario de la estación de gasolina, el Sr. Benitez, a que realizara un sin número de modificaciones y remodelaciones que integraron los dos locales que existían originalmente en el 1997 para el uso de la estación de gasolina. Las remodelaciones que el Sr. Benitez llevó a cabo con la autorización de los dueños conllevó la integración del Local “A” y “B” en uno solo. En efecto, cuando los demandados negociaron con el Sr. Benitez para comprar la llave de la estación de gasolina, toda la estructura de concreto que una vez albergó los dos locales se utilizaba como estación de gasolina, según autorizado por los dueños. Sólo operando así, era rentable el negocio para el Sr. Benitez, según declaró.

Cuando los demandantes le autorizaron a los demandados a comprarle la llave de la estación de gasolina al Sr. Benitez, los demandantes conocían que el Sr. Benitez ya utilizaba y había integrado los dos locales originales en uno como estación de gasolina según fue autorizado a hacerlo por Don Antonio Rodríguez Allende y su esposa, Doña Gloria Vizcarrondo Rodríguez....”

Al no existir contrato verbal separado y al estar los dos locales integrados en una sola estación de gasolina en operación, los demandantes carecen de causa de acción en contra de los demandados.
El Tribunal concluyó que los apelantes incurrieron en actuaciones que constituyen “un patrón de actos destinados a entorpecer el uso y disfrute de la propiedad arrendada por los [apelados]”, lo que había provocado daños a éstos.
El Tribunal declaró sin lugar la demanda y con lugar la reconvención y condenó a los apelantes a resarcir a los apelados por los daños causados, los que el Tribunal valoró en $25,000.00. El Tribunal determinó que los apelantes habían actuado de forma temeraria en su prosecución del litigio y les impuso una condena de $5,000.00 por concepto de honorarios de abogado.
Inconformes, los apelantes acudieron ante este Tribunal.
*977 II
En su recurso, los apelantes plantean que el Tribunal de Primera Instancia erró al resolver que el Precontrato suscrito entre las partes es, en realidad, un contrato definitivo y no un mero contrato preparatorio y al determinar que las áreas sobre las cuales solicitaron el desahucio de los apelados estaban comprendidas en el contrato de arrendamiento original pactado con el Sr. Benitez.
Como se sabe, los contratos son fuente de obligaciones en nuestro ordenamiento. 31 L.P.R.A. see. 2992. Conforme lo dispone el Artículo 1044 del Código Civil de Puerto Rico, las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos. 31 L.P.R.A. sec. 2994; Álvarez v. Rivera, 165 D.P.R._(2005), 2005 J.T.S. 90, a la pág. 1366.
La existencia de un contrato requiere la concurrencia de los siguientes elementos: (1) consentimiento de los contratantes; (2) objeto cierto que sea materia del contrato; (3) causa de la obligación que se establezca. 31 L.P.R.A. see. 3391; Garriga, Hijo, Inc. v. Cond. Marbella, 143 D.P.R. 927, 932 esc. 3 (1997); Quiñones López v. Manzano Pozas, 141 D.P.R. 139, 154 (1996).
Como regla general, los contratos no tienen requisito de forma. 31 L.P.R.A. see. 3451. Los contratos verbales son tan válidos y vinculantes como lo son los contratos establecidos por escrito. Véase, Cruz v. Sánchez, 172 D.P.R._(2007), 2007 J.T.S. 203, a la pág. 407; véase, además, Collazo v. Huertas, 171 D.P.R. _(2007), 2007 J.T.S. 96.
El consentimiento necesario para vincular a una persona, de este modo, puede manifestarse por la mera aceptación de una oferta relacionada con la cosa y causa del negocio. 31 L.P.R.A. see. 3401; Vilá & Hnos., Inc. v. Owens Ill. de P.R., 117 D.P.R. 825, 834-835 (1986); Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517, 521 (1982).
Los apelantes plantean que el negocio otorgado por ellos y los apelados fue un mero precontrato, que, según los propios términos de la escritura, estaba sujeto al otorgamiento de una escritura final para el arrendamiento. Los apelantes señalan que, al momento de ellos suscribir su acuerdo con los apelados, éstos todavía no habían adquirido la llave del negocio.
Un precontrato es un contrato preparatorio cuya peculiaridad consiste en que su objeto es definido por las partes con miras al perfeccionamiento de otro contrato. Véase, S.L.G. Irizarry v. S.L.G. García, 155 D.P.R. 713, 722 (2001); Jordán-Rojas v. Padró-González, 103 D.P.R. 813, 817 (1975); Rossy v. Tribunal Superior y Sucn. Lloréns, Interventora, 80 D.P.R. 729, 740 (1958).
En el presente caso, las partes titularon su negocio como un precontrato. Pero el nombre no hace la cosa. Para determinar el alcance jurídico del negocio, es necesario examinar cuáles fueron las prestaciones acordadas y si el negocio estaba completo o requería alguna otra contratación para alcanzar su viabilidad.
No existe duda, en este sentido, que luego de que los apelados suscribieran la escritura de cesión de arrendamiento con los esposos Benitez Nevárez el 28 de enero de 2001 quedaron subrogados en la posición de éstos en cuanto al arrendamiento de la propiedad de los apelantes, con las modificaciones pactadas en el precontrato. Blasini v. Beech-Nut Life Savers, 104 D.P.R. 570, 575 (1976); Warner Lambert Co. v. Tribunal Superior, 101 D.P.R. 378, 388-394 (1973); véase, además, 31 L.P.R.A. see. 3241.
Los apelados pasaron a ocupar la propiedad, operaron a partir de entonces la estación de gasolina y pagaron el canon de arrendamiento acordado con los apelantes. No se otorgó ningún contrato adicional porque esto resultaba innecesario.
*978 Al igual que el Tribunal de Primera Instancia, somos de la opinión que el negocio otorgado entre las partes no fue un verdadero precontrato, sino un contrato que era efectivo para permitir la subrogación de los apelados en el contrato de arrendamiento, cf., S.L.G. Irizarry v. S.L.G. García, 155 D.P.R._, a la pág. 723; Rosa Valentín v. Vázquez Lozada, 103 D.P.R. 796, 807-810 (1975), sujeto a la condición suspensiva de que los apelados culminaran su negocio con los esposos Benitez Nevárez. Véase, López v. González, 163 D.P.R._ (2004), 2004 J.T.S. 179, a la pág. 417-418.
El contrato establecía todos los requisitos necesarios para la existencia de un contrato de arrendamiento entre los apelados y los apelantes que cobró plena eficacia cuando éstos sustituyeron al Sr. Benitez y ocuparon la propiedad.
Los apelantes plantean que el Tribunal de Primera Instancia erró al determinar que el' acuerdo de arrendamiento incluía las áreas en controversia. Los apelantes señalan que el acuerdo original de arrendamiento entre ellos y los esposos Benitez Nevárez solamente incluía el Local A, dedicado a la estación de gasolina. Según ellos, los acuerdos posteriores para incluir el Local B y las áreas de las bombas y el espacio para el tanque diesel fueron producto de acuerdos verbales separados, que no eran parte del mismo negocio. Lo mismo sucedió con el mirador, el que fue arrendado por los apelados mediante un acuerdo verbal similar. Los apelados alegan que, toda vez que las áreas en controversia no eran parte del negocio, éstos no fueron incluidos en la cesión del arrendamiento a favor de los apelados.
El Tribunal de Primera Instancia, según hemos visto, determinó que el objeto del contrato era uno sólo, compuesto por el área que habían estado ocupando los esposos Benitez Nevárez, que ya incluía las áreas mencionadas, con excepción del mirador, que fue objeto de un acuerdo separado entre los apelados y los apelantes. No estamos en posición de sustituir esta apreciación.
La norma en nuestra jurisdicción, según se conoce, es que un tribunal apelativo no intervendrá con las determinaciones formuladas por el Tribunal de Primera Instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Véanse, Colón v. Glamourous Nails, 167 D.P.R._(2006), 2006 J.T.S. 25, a la pág. 879; Álvarez v. Rivera, 2005 J.T.S. 90, a la pág. 1366; Colón y otros v. K-marty otros, 154 D.P.R. 510, 520 (2001); Rolón v. Charlie Car Rental, Inc., 148 D.P.R. 420, 433 (1999); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8, 14 (1987); Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Regla 43.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.
Dicha norma descansa en la apreciación de que el juzgador de los hechos, quien recibe en primera instancia la prueba, es quien está en mejor posición para evaluar la misma. Trinidad v. Chade, 153 D.P.R. 280, 291 (2001); Flores v. Soc. de Gananciales, 146 D.P.R. 45, 49-50 (1998); Ortiz v. Cruz Pabón, 103 D.P.R. 939, 947 (1975).
En el presente caso, entendemos que la determinación del Tribunal está razonablemente sostenida por la prueba, en particular, por el testimonio del Sr. Benitez. Debe recordarse que la intención de las partes fue que los apelados adquirieran la llave de un negocio en marcha, que los esposos Benitez Nevárez conducían en la propiedad de los apelantes. El Tribunal de Primera Instancia concluyó que el objeto del arrendamiento debía ser fijado de conformidad con las áreas que estaban bajo la posesión de los esposos Benitez Nevárez al momento de la cesión, las que incluían tanto el Local A como el Local B y aquellos otros espacios que eran necesarios para la operación de la estación de gasolina. Esta conclusión es razonable.
Los apelantes señalan que la situación de estas áreas no es distinta a la del mirador, que fue objeto de sentencia de desahucio en el caso FPE2003-0323, la que fue confirmada por este Tribunal, KLAN-2003-00798.
El récord refleja, sin embargo, que al momento de la cesión del arrendamiento, los esposos Benitez Nevárez *979 no ocupaban el mirador, sino que éste fue objeto de un acuerdo separado entre los apelantes y los apelados luego de que éstos ocupasen la propiedad. Los apelados acordaron pagar un canon mensual separado de $150.00 por esta área, lo que refleja que las partes consideraban que el mirador quedaba fuera del acuerdo original. No ocurrió así con las áreas para las bombas adicionales de gasolina o para el tanque de diesel, las cuales no conllevaron pago adicional alguno. El Tribunal de Primera Instancia podía considerar que la ausencia de un pago por estos espacios implicaba que los apelantes entendían que estas mejoras caían dentro de lo acordado en el arrendamiento. El error no se cometió.
Los apelantes se quejan de que el Tribunal de Primera Instancia les haya impuesto el pago de $5,000 en honorarios de abogado a favor de los apelados.
La Regla 44.1(d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1(d), autoriza al Tribunal a imponer honorarios de abogado cuando una parte o su abogado hubiera procedido con temeridad.
El Tribunal Supremo de Puerto Rico ha aclarado que el propósito de la imposición de honorarios de abogado es sancionar al litigante perdidoso que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obliga a la otra parte a asumir innecesariamente las molestias, gastos, trabajo e inconveniencias de un pleito. Véanse, Jarra Corp. v. Axxis Corp., 155 D.P.R. 764, 779 (2001); Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713, 718 (1987).
El Tribunal Supremo de Puerto Rico también ha expresado que la acción que amerita la imposición de este tipo de condena es cualquiera que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o que produzca la necesidad de que otra parte incurra en gestiones evitables. Véase, Fernández v. San Juan Cement Co., Inc., 118 D.P.R., a las págs. 718-719; véanse, además, Depto. Rec. v. Asoc. Rec. Round Hill, 149 D.P.R. 91, 100 (1999); Soc. de Gananciales v. Royal Bank de P.R., 145 D.P.R. 178, 209-210(1998).
El Tribunal de Primera Instancia goza de amplia discreción en este tipo de determinaciones. Véanse, Quiñones López v. Manzano Pozas, 141 D.P.R._, a la pág. 181; Miranda v. E.L.A., 137 D.P.R. 700, 719 (1994); Fernández v. San Juan Cement Co., Inc., 118 D.P.R._, ala pág. 717.
Este Tribunal no intervendrá con este tipo de determinación en ausencia de un claro abuso de discreción. Ramos Báez v. Bossolo López, 143 D.P.R. 567, 571-572 (1997); Cotto Morales v. Ríos, 140 D.P.R. 604, 626 (1996).
En la situación de autos, no estimamos que el Tribunal de Primera Instancia abusara de su discreción al imponer la condena en cuestión.
Por los fundamentos expresados, se confirma la sentencia emitida por el Tribunal de Primera Instancia.
Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2008 DTA 38
1. Además de la apelante Híllca Rodríguez Vizcarrondo, los esposos Rodríguez Vizcarrondo tuvieron otra hija y un hijo, Rosalina y Antonio Rodríguez Vizcarrondo, quienes les premurieron. Las apelantes Marilia y Gloria Siaca Rodríguez son hijas de Rosalina Rodríguez Vizcarrondo. Los apelantes Ray y Walter Rodríguez Osorio son hijos de Antonio Rodríguez *980 Vizcarrondo.
2. Para esta fecha, la Sra. Vizcarrondo también había fallecido, por lo que los apelantes comparecieron en sustitución de ambos de sus causantes.
3. Inicialmente, el Tribunal de Primera Instancia entendió que las partes habían resuelto sus diferencias y dictó sentencia de conformidad el 7 de febrero de 2003. La sentencia instruía a las partes a otorgar un nuevo contrato de arrendamiento conforme a los acuerdos llegados por las partes. Los apelantes, sin embargo, se negaron a suscribir el nuevo contrato, lo que dio lugar a que los apelados solicitaran el relevo de la sentencia emitida el 7 de febrero de 2003, lo que fue finalmente ordenado por este Tribunal mediante sentencia emitida el 27 de enero de 2004 en el caso KLCE-2003-01193.
4. Oportunamente, se ordenó el lanzamiento del ocupante del mirador, decisión que también fue convalidada por este Tribunal mediante resolución emitida el 8 de julio de 2004 en el recurso KLAU-2004-00007.